Opinion
BAXTER, J.
An owners association filed the instant construction defect action against a condominium developer, seeking recovery for damage to its property and damage to the separate interests of the condominium owners who compose its membership. In response, the developer filed a motion to compel arbitration, based on a clause in the recorded declaration of covenants, conditions, and restrictions providing that the association and the individual owners agree to resolve any construction dispute with the developer through binding arbitration in accordance with the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.).
*232 We granted review to determine whether the arbitration clause is binding on the association, and if so, whether it must be invalidated as unconscionable. As we shall explain, even though the association did not exist as an entity independent of the developer when the declaration was drafted and recorded, it is settled under the statutory and decisional law pertaining to common interest developments that the covenants and terms in the recorded declaration reflect written promises and agreements that are subject to enforcement against the association. We conclude that the arbitration clause binds the association and is not unconscionable.
Factual and Procedural Background
Pinnacle Market Development (US), LLC, and others (collectively Pinnacle) developed a mixed-use residential and commercial common interest community in San Diego known as the Pinnacle Museum Tower Condominium (the Project). Pursuant to the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.; the Davis-Stirling Act or the Act), Pinnacle, as the owner and developer of the Project property, drafted and recorded a “Declaration of Restrictions” to govern its use and operation (the Project CC&R’s). The Project CC&R’s contain a number of easements, restrictions and covenants, described as “enforceable equitable servitudes” and “binding on all parties having any right, title or interest” in the property, and their heirs, successors and assigns. The Project CC&R’s also provided for the creation of a nonprofit mutual benefit corporation called the Pinnacle Museum Tower Association (the Association) to serve as the owners association responsible for managing and maintaining the Project property.
In selling the Project units, Pinnacle conveyed to each buyer an airspace condominium in fee and a proportionate undivided interest in the common area as a tenant in common. All other real property (including the property in the tower module, the parking structure, and other appurtenances) was deeded directly to the Association in fee.[1] Pursuant to the Project CC&R’s, each condominium owner is a member of the Association with certain voting rights, and each agrees to pay assessments for all purposes described in the declaration, including the Association’s maintenance and improvement of the Association’s property and the common areas.
As relevant here, article XVIII of the Project CC&R’s (article XVIII) recites that, by accepting a deed for any portion of the Project property, the Association and each condominium owner agree to waive their right to a jury trial and to have any construction dispute resolved exclusively through *233 binding arbitration in accordance with the FAA and the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.).[2] Article XVIII specifies that it applies only to a construction dispute in which Pinnacle has been named as a party, and provides that no amendment may be made to its terms without Pinnacle’s written consent.
The individual owners bought condominium units in the Project pursuant to a standard purchase agreement. The agreement anticipated creation of the Association and explicitly provided: “By acceptance of the Grant Deed to the Condominium, Buyer shall be deemed to have accepted and agreed to comply” with the recorded Project CC&R’s. Section 8 of the purchase agreement stated that, by agreeing to resolve all disputes as provided in article XVIII, the parties give up their respective rights to have such disputes tried before a jury. Section 8 also required the parties to initial a provision reciting their agreement “TO COMPLY WITH ARTICLE XVIII OF THE DECLARATION WITH RESPECT TO THE DISPUTE REFERENCED THEREIN.”[3]
The Association filed the instant action against Pinnacle, alleging that construction defects caused damage to the Project. As the sole plaintiff, the Association seeks recovery not only for damage to its own property, but also for damage to the interests held by its individual members. The Association claims standing to represent the owners’ interests pursuant to Civil Code section 1368.3, which grants an owners association the requisite standing to sue a developer in its own name for damage to the common areas and damage to the separate interests the association is obligated to maintain or repair. (See Windham at Carmel Mountain Ranch Assn. v. Superior Court (2003) 109 Cal.App.4th 1162, 1172, 1174-1175 [135 Cal.Rptr.2d 834] [addressing predecessor to Civ. Code, § 1368.3]; see also Civ. Code, § 945.)
*234 Pinnacle filed a motion to compel arbitration, contending the FAA mandates enforcement of article XVIII’s arbitration provisions. The trial court determined that the FAA is applicable and that article XVIII embodies an agreement to arbitrate between Pinnacle and the Association. Nonetheless, the court invalidated the agreement upon finding it marked by slight substantive unconscionability and a high degree of procedural unconscionability.
The Court of Appeal affirmed. Although finding unanimously that the FAA is applicable, the court concluded, by a split vote, that the arbitration clause in the Project CC&R’s does not constitute an agreement sufficient to waive the Association’s constitutional right to jury trial for construction defect claims. The majority additionally held that, even assuming the Association is bound by the jury waivers in the purchase agreements signed by the individual condominium owners, the waivers are unconscionable and unenforceable.
We granted Pinnacle’s petition for review.
Discussion
Article XVIII of the Project CC&R’s provides that Pinnacle and, by accepting a deed to any portion of the Project property, the Association and each individual condominium owner agree to submit any construction dispute to binding arbitration in accordance with the FAA (and with the CAA to the extent it is consistent with the FAA). (See ante, fn. 2.) To determine whether article XVIII is binding upon and enforceable against the Association, we consider the rules governing compelled arbitration of claims, the principles relating to the contractual nature of the covenants and restrictions in a declaration recorded pursuant to the Davis-Stirling Act, and the doctrine of unconscionability.
A. Arbitration Under the FAA
Consistent with the express terms of article XVIII, both the trial court and the Court of Appeal determined that the FAA applies in this case because materials and products incorporated into the Project were manufactured in other states. (9 U.S.C. § 2; see Allied-Bruce Terminix Cos. v. Dobson (1995) 513 U.S. 265, 281-282 [130 L.Ed.2d 753, 115 S.Ct. 834].) Although the Association currently disputes the FAA’s applicability, we accept the determination of the lower courts because the issue was not preserved for review.
Section 2 of the FAA provides in relevant part: “A written provision in ... a contract evidencing a transaction involving commerce to settle by *235 arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” (9 U.S.C. § 2.) This statute stands as “a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.” (Moses H. Cone Hospital v. Mercury Constr. Corp. (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927] (Moses H. Cone).)[4]
To ensure that arbitration agreements are enforced according to their terms, “the FAA pre-empts state laws which ‘require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.’ ” (Volt Info. Sciences v. Leland Stanford Jr. U. (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248] (Volt); see, e.g., Perry v. Thomas (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520] [FAA preempts Cal. Lab. Code provision allowing maintenance of wage collection actions despite private agreement to arbitrate]; Southland Corp. v. Keating (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852] [FAA preempts Cal. statute rendering agreements to arbitrate franchise claims unenforceable].) Likewise, the FAA precludes a court from construing an arbitration agreement “in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot.” (Perry, at pp. 492-493, fn. 9.)
One of the consequences of the FAA’s applicability is its effect on Code of Civil Procedure section 1298.7, which allows a purchaser to pursue a construction and design defect action against a developer in court, even when the parties have signed a real property purchase and sale agreement containing an arbitration clause.[5] Even assuming this California statute might otherwise extend to a recorded condominium declaration, the FAA would preempt its application here because it discriminates against arbitration. (See Shepard v. Edward Mackay Enterprises, Inc. (2007) 148 Cal.App.4th 1092, *236 1095 [56 Cal.Rptr.3d 326].) The Court of Appeal agreed on this point, and the Association does not rely on this statute to avoid arbitration.
Nonetheless, it is a cardinal principle that arbitration under the FAA “is a matter of consent, not coercion.” (Volt, supra, 489 U.S. at p. 479.) Thus, “ ‘a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.’ ” (AT&T Technologies v. Communications Workers (1986) 475 U.S. 643, 648 [89 L.Ed.2d 648, 106 S.Ct. 1415]; see Cronus Investments, Inc. v. Concierge Services (2005) 35 Cal.4th 376, 384-385 [25 Cal.Rptr.3d 540, 107 P.3d 217].) In determining the rights of parties to enforce an arbitration agreement within the FAA’s scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration. (Volt, at p. 474; see Moses H. Cone, supra, 460 U.S. at p. 24.)
In California, “[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.” (Craig v. Brown & Root, Inc. (2000) 84 Cal.App.4th 416, 420 [100 Cal.Rptr.2d 818]; see Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 972-973 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Generally, an arbitration agreement must be memorialized in writing. (Fagelbaum & Heller LLP v. Smylie (2009) 174 Cal.App.4th 1351, 1363 [95 Cal.Rptr.3d 252].) A party’s acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party’s acceptance may be implied in fact (e.g., Craig, at p. 420 [employee’s continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) or be effectuated by delegated consent (e.g., Ruiz v. Podolsky (2010) 50 CalAth 838, 852-854 [114 Cal.Rptr.3d 263, 237 P.3d 584] (Ruiz).) An arbitration clause within a contract may be binding on a party even if the party never actually read the clause. (24 Hour Fitness, Inc. v. Superior Court (1998) 66 Cal.App.4th 1199, 1215 [78 Cal.Rptr.2d 533].)
The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability. (Engalla v. Permanente Medical Group, Inc., supra, 15 Cal.4th at p. 972.) Where, as here, the evidence is not in conflict, we review the trial court’s denial of arbitration de novo. (Service Employees Internat. Union, Local 1021 v. County of San Joaquin (2011) 202 Cal.App.4th 449, 455 [135 Cal.Rptr.3d 844].)
B. Contractual Nature of Terms in a Recorded Declaration
The Davis-Stirling Act governs the creation and operation of common interest developments such as the condominium development here. Pursuant to the Act, a condominium development may be created when a developer of *237 land records a declaration and other documents to that effect and thereafter conveys one of the units in the development. (Civ. Code, § 1352.)
As one of the primary documents governing the development’s operation, the declaration must set forth a legal description of the development, the name of the owners association that will own or operate the development’s common areas and facilities, and the covenants and use restrictions that are intended to be enforceable equitable servitudes. (Civ. Code, §§ 1351, 1353.) In addition, the declaration may “contain any other matters the original signator of the declaration [(e.g., the developer)] or the owners consider appropriate.” (Civ. Code, § 1353, subd. (b); see Cal. Code Regs., tit. 10, § 2792.8, subd. (a).)
Terms commonly included in a declaration concern membership and voting rights in the owners association, maintenance responsibilities, procedures for calculating and collecting assessments, accounting and insurance requirements, architectural and/or design control, and enforcement of the declaration. Pursuant to state regulatory law, a declaration may also include provisions for binding or nonbinding arbitration of disputes between a developer and an owners association, so long as the designated process for arbitration satisfies certain regulatory requirements. (Bus. & Prof. Code, §§ 11001, 11004.5, 11018.5; Cal. Code Regs., tit. 10, § 2791.8; see post, fn. 7.) When terms have been included for the benefit of the declarant (developer), an association’s ability to delete them is limited. That is, although an association may freely amend a declaration to remove certain types of restrictions once the developer has completed its construction and marketing activities (Civ. Code, § 1355.5, subds. (a), (b)), no court may approve an amendment that will “eliminate any special rights, preferences, or privileges designated in the declaration as belonging to the declarant, without the consent of the declarant” (Civ. Code, § 1356, subd. (e)(2)).
Once the first buyer manifests acceptance of the covenants and restrictions in the declaration by purchasing a unit, the common interest development is created (Civ. Code, § 1352), and all such terms become “enforceable equitable servitudes, unless unreasonable” and “inure to the benefit of and bind all owners of separate interests in the development” (Civ. Code, § 1354, subd. (a); see Bus. & Prof. Code, § 11018.5, subd. (c)). For this reason, we have described recorded declarations as “the primary means of achieving the stability and predictability so essential to the success of a shared ownership housing development.” (Nahrstedt v. Lakeside Village Condominium Assn. (1994) 8 Cal.4th 361, 382 [33 Cal.Rptr.2d 63, 878 P.2d 1275] (Nahrstedt).) Having a single set of recorded covenants and restrictions that applies to an entire common interest development protects the intent, expectations, and wishes of those buying into the development and the *238 community as a whole by ensuring that promises concerning the character and operation of the development are kept. (See Citizens for Covenant Compliance v. Anderson (1995) 12 Cal.4th 345, 364 [47 Cal.Rptr.2d 898, 906 P.2d 1314] (Citizens for Covenant Compliance); Nahrstedt, at p. 383.)
One important feature contributing to the stability and success of condominium developments is that actual notice is not required for enforcement of a recorded declaration’s terms against subsequent purchasers. (Nahrstedt, supra, 8 Cal.4th at p. 379.) Rather, the recording of a declaration with the county recorder “provides sufficient notice to permit the enforcement” of the covenants and restrictions contained therein (ibid.; see Citizens for Covenant Compliance, supra, 12 Cal.4th at pp. 364-365; Villa Milano Homeowners Assn. v. II Davorge (2000) 84 Cal.App.4th 819, 825 [102 Cal.Rptr.2d 1] (Villa Milano)), and condominium purchasers are “deemed to agree” to them. (Citizens for Covenant Compliance, at p. 365; see Villa Milano, at p. 825.)
In this regard, the Legislature has provided various protections to help ensure that condominium purchasers know what they are buying into. For example, developers and subsequent sellers must provide copies of the declaration and other governing documents to prospective purchasers. (Bus. & Prof. Code, § 11018.6; Civ. Code, § 1368, subd. (a).) Additionally, developers generally must provide prospective purchasers with a copy of the Department of Real Estate’s public report approving the particular condominium development and a copy of a statutory statement outlining general information regarding common interest developments. (Bus. & Prof. Code, § 11018.1, subds. (a), (c); see Bus. & Prof. Code, § 11018.2.) The statutory statement informs prospective purchasers that their ownership in the development and their rights and remedies as members of its association “ ‘will be controlled by governing instruments’ ” such as the “ ‘Declaration of Restrictions (also known as CC&R’s),’ ” and that they should “ ‘[s]tudy these documents carefully before entering into a contract to purchase a subdivision interest.’ ” (Bus. & Prof. Code, § 11018.1, subd. (c).) Hence, condominium owners should not be surprised by the covenants and restrictions in a recorded declaration, which ordinarily are given binding effect even if they would not fulfill the common law requirements for creation of an equitable servitude or a restrictive covenant (Villa De Las Palmas Homeowners Assn. v. Terifaj (2004) 33 Cal.4th 73, 87 [14 Cal.Rptr.3d 67, 90 P.3d 1223]), or the privity requirements of a contract (Civ. Code, §§ 1350-1378; Nahrstedt, supra, 8 Cal.4th at p. 380).
Another significant way in which the Act promotes stability and predictability is by providing that the “covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of the separate interests *239 in the development.” (Civ. Code, § 1354, subd. (a), italics added.) This statutory presumption of reasonableness requires that recorded covenants and restrictions be enforced “ ‘unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit.’ ” (Villa De Las Palmas Homeowners Assn. v. Terifaj, supra, 33 Cal.4th at p. 88, quoting Nahrstedt, supra, 8 Cal.4th at p. 382.)
In Nahrstedt, supra, 8 Cal.4th 361, we elaborated upon the contractual nature of a declaration and the enforcement of its terms as equitable servitudes under the Davis-Stirling Act. “[E]quitable servitudes permit courts to enforce promises restricting land use when there is no privity of contract between the party seeking to enforce the contract and the party resisting enforcement. Like any promise given in exchange for consideration, an agreement to refrain from a particular use of land is subject to contract principles, under which courts try ‘to effectuate the legitimate desires of the covenanting parties.’ [Citation.] When landowners express the intention to limit land use, ‘that intention should be carried out.’ ” (Nahrstedt, at pp. 380-381.) Although Nahrstedt spoke specifically in terms of land use restrictions, its analysis logically extends to all covenants in a declaration, which by statute are also enforceable as equitable servitudes unless unreasonable. (Civ. Code, § 1354, subd. (a); e.g., Arias v. Katella Townhouse Homeowners Assn., Inc. (2005) 127 Cal.App.4th 847 [26 Cal.Rptr.3d 113] [condominium owner who prevailed in enforcement action entitled to recover contractual attorney fees under covenants, conditions, and restrictions].)
Moreover, settled principles of condominium law establish that an owners association, like its constituent members, must act in conformity with the terms of a recorded declaration. (See Civ. Code, § 1354, subd. (a); Lamden v. La Jolla Shores Clubdominium Homeowners Assn. (1999) 21 Cal.4th 249, 268 [87 Cal.Rptr.2d 237, 980 P.2d 940] [homeowner can sue association to compel enforcement of declaration’s provisions]; Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn. (2008) 166 Cal.App.4th 103, 124 [82 Cal.Rptr.3d 389].) There is, of course, no question that an owners association functions as an entity distinct and separate from its owner members and may hold title to real property in a condominium development in its own name. However, an association must exercise its property rights .and its right of management over the affairs of a development in a manner consistent with the covenants, conditions, and restrictions of the declaration (CC&R’s). That a declaration operates to bind an association is both logical and sound, for the success of a development would be gravely undermined if the association were allowed to disregard the. intent, expectations, and wishes of those whose collective interests the association represents. (See Citizens for Covenant Compliance, supra, 12 Cal.4th at p. 364; Nahrstedt, supra, 8 Cal.4th at pp. 382-384.)
*240 In light of the foregoing, it is no surprise that courts have described recorded declarations as contracts. (E.g., Frances T. v. Village Green Owners Assn, (1986) 42 Cal.3d 490, 512-513 [229 Cal.Rptr. 456, 723 P.2d 573] [CC&R’s as contract between condominium owners association and unit owner]; Villa Milano, supra, 84 Cal.App.4th at pp. 824-826 [CC&R’s as contract between developer and homeowners association]; see Barrett v. Dawson (1998) 61 Cal.App.4th 1048, 1054 [71 Cal.Rptr.2d 899] [right of neighbors to enforce a recorded restrictive covenant limiting the neighboring property’s use was “clearly contractual”]; Harbor View Hills Community Assn. v. Torley (1992) 5 Cal.App.4th 343, 346-349 [7 Cal.Rptr.2d 96] [amendment to Civ. Code, § 1717, which governs contractual attorney fees, was applicable to CC&R’s of homeowners association]; see also Franklin v. Marie Antoinette Condominium Owners Assn. (1993) 19 Cal.App.4th 824, 828, 833 [23 Cal.Rptr.2d 744] [accepting parties’ assumption that CC&R’s formed a contract between condominium owners and owners association].)
In the proceedings below, the Court of Appeal held the arbitration clause in the Project CC&R’s was not binding on the Association. Specifically, the court observed that the Association could not have agreed to arbitrate or waive its constitutional right to a jury trial, because “for all intents and purposes, Pinnacle was the only party to the ‘agreement,’ and there was no independent homeowners association when Pinnacle recorded the CC&R’s.” This reasoning is not persuasive in light of the statutory and contract principles at play.
“It is true we have emphasized that arbitration derives its legitimacy from the fact that the parties consent to resort to the arbitral forum rather than to litigation, with its possibility of a jury trial. [Citation.] Such consent is generally required.” (Ruiz, supra, 50 Cal.4th at p. 852.) As we have previously recognized, however, various legal theories allow for delegated authority to consent. Not only dp common law principles such as fiduciary duty and agency permit enforcement of arbitration agreements against nonsignatory third parties, but the Legislature can also provide for the reasonable delegation of authority to consent. (Id. at pp. 852-854.)
In Ruiz, supra, 50 Cal.4th 838, we addressed the operation of Code of Civil Procedure section 1295, which allowed, but did not require, a patient to contract with a health care provider to resolve all medical malpractice claims through binding arbitration. The question presented was whether an arbitration agreement signed by a patient applied to the resolution of wrongful death claims, which are not considered derivative of a patient’s claims, even though the wrongful death claimants were not themselves signatories to the arbitration agreement. (See Ruiz, at p. 841.) After observing that the statute intended to create “a capacity of health care patients to bind their heirs to arbitrate *241 wrongful death actions,” we found that binding the heirs “does not in any sense” extinguish or restrict their claims, “but merely requires that the claims ‘be resolved by a common, expeditious, and judicially favored method.’ ” (Id. at p. 852.) We firmly rejected the argument that a rule permitting a person to bind his or her adult children to arbitration would violate the state constitutional right to a jury trial. (Cal. Const., art. I, § 16.) As we explained, “the Legislature may devise reasonable rules in civil litigation to permit the delegation to another party of the power to consent to arbitration instead of a jury trial. ... In the present case, the Legislature by statute has created the right of certain heirs to a wrongful death action and may also by statute place reasonable conditions on the exercise of that right.” (Ruiz, at p. 853.)
While not directly on point, the principles articulated in Ruiz support a similar result in the context of recorded declarations. As discussed, the Legislature has crafted a statutory scheme providing for the capacity of a developer to create a condominium development subject to covenants and restrictions governing its operation and use. There appears no question that, under the Davis-Stirling Act, each owner of a condominium unit either has expressly consented or is deemed by law to have agreed to the terms in a recorded declaration. As the exclusive members of an owners association, the owners have every right to expect that the association, in representing their collective interests, will abide by the agreed-upon covenants in the declaration, including any covenant to invoke binding arbitration as an expeditious and judicially favored method to resolve a construction dispute, in the absence of unreasonableness. That a developer and condominium owners may bind an association to an arbitration covenant via a recorded declaration is not unreasonable; indeed, such a result appears particularly important because (1) the Davis-Stirling Act confers standing upon an association to prosecute claims for construction damage in its own name without joining the individual condominium owners (Civ. Code, § 1368.3) and (2) as between an association and its members, it is the members who pay the assessments that cover the expenses of resolving construction disputes. Given these circumstances, an association should not be allowed to frustrate the expectations of the owners (and the developer) by shunning their choice of a speedy and relatively inexpensive means of dispute resolution. Likewise, condominium owners should not be permitted to thwart the expectations of a developer by using an owners association as a shell to avoid an arbitration covenant in a duly recorded declaration. (Villa Milano, supra, 84 Cal.App.4th at pp. 825-826, fn. 4.)
Amici curiae in support of the Association point to a portion of Civil Code section 1353, subdivision (a), providing that a declaration shall set forth “the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes.” Focusing on this statutory language, amici curiae assert that the Davis-Stirling Act *242 limits a developer’s authority to impose on an owners association only provisions commonly understood as equitable servitudes, that is, restrictions relating to the use or maintenance of the property. (Civ. Code, §§ 1353, subd. (a), 1468, subd. (c).) In their view, an arbitration clause pertaining to construction disputes has no relationship to the use of property and therefore no place in a recorded declaration.
Even assuming that a covenant requiring arbitration of construction disputes does not fall within traditional notions of an equitable servitude, the Davis-Stirling Act, considered as a whole, does not support amici curiae’s narrow construction of its provisions. As discussed, the Act specifies that a declaration “may contain any other matters the original signator of the declaration [the developer] or the owners consider appropriate.” (Civ. Code, § 1353, subd. (b).) The Act also bars a court from approving an amendment to a declaration that would “eliminate any special rights, preferences, or privileges designated in the declaration as belonging to the declarant, without the consent of the declarant.” (Civ. Code, § 1356, subd. (e)(2).) Thus, notwithstanding the traditional uses to which equitable servitudes and recorded declarations have been put, the Act grants developers latitude to place in declarations any term they deem appropriate, including provisions that afford them special rights and privileges, so long as such terms are not unreasonable.
It bears emphasis that placement of arbitration covenants in a recorded declaration violates none of the Davis-Stirling Act’s proscriptions.[6] To the contrary, their inclusion is consistent with the Department of Real Estate’s contemplation that a recorded declaration may feature a provision for binding arbitration between a developer and an owner’s association. (Cal. Code Regs., tit. 10, § 2791.8.)[7] In short, there is nothing in the Act itself that prohibits a recorded declaration from containing arbitration covenants.
*243 Moreover, we find the inclusion of article XVIII in the Project CC&R’s is consistent with provisions of the Act that contemplate an alternative dispute resolution process as a prerequisite to construction defect litigation. Civil Code section 1375 provides that before an owners association may file suit against a developer for construction or design defects, the parties must either attempt to settle the dispute or attempt to agree to submit the matter to alternative dispute resolution presided over by a neutral facilitator. One court described these provisions as demonstrating that “the Legislature has chosen to encourage alternative dispute resolution between homeowners associations and developers, but not to require it.” (Villa Milano, supra, 84 Cal.App.4th at p. 831, italics added.) We agree with that specific observation, but see nothing in the language or history of Civil Code section 1375 that purports to prohibit a covenant for binding arbitration of construction defect claims.[8] Indeed, we perceive no legitimate reason to frustrate the expectations of purchasers who choose to buy into a development where binding arbitration is the designated process for resolving such claims. Like other methods of alternative dispute resolution, binding arbitration benefits both the developer and the entire common interest community by providing a speedy and relatively inexpensive means to address allegations of defect damage to the common areas and other property interests.
In addition to imposing prelitigation procedures for construction disputes, the Davis-Stirling Act requires that an owners association provide “a fair, reasonable, and expeditious procedure” for resolving disputes between an association and a member involving their rights, duties, or liabilities under the governing documents or the applicable statutes. (Civ. Code, § 1363.820, subd. (a); see Civ. Code, §§ 1363.810, 1363.830.[9]) The Act also requires that the association and its members use a separate alternative dispute resolution *244 procedure involving a neutral decision maker as a prerequisite to filing an “enforcement action” seeking declaratory, injunctive, or writ relief, either alone or in conjunction with a claim falling within the jurisdiction of the small claims court. (Civ. Code, § 1369.510 et seq.; see generally 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 125, p. 185.) We observe that article XVIII comports with these legislative efforts to encourage resolution of condominium matters out of court.
In holding to the contrary, the Court of Appeal made reference to the foregoing dispute resolution schemes and focused on Civil Code section 1369.510, subdivision (a), which states in part: “The form of alternative dispute resolution chosen pursuant to this article [(governing enforcement actions filed by an owner or an association)] may be binding or nonbinding, with the voluntary consent of the parties.” (Italics added.) According to the Court of Appeal, the italicized clause signifies that “the waiver of the right to a jury requires an actual ‘agreement’ ” and that therefore arbitration provisions in a recorded declaration are not binding as an agreement to arbitrate. We disagree.
The language in Civil Code section 1369.510, subdivision (a), simply adheres to the familiar principle that arbitration is a matter of consent, not coercion. The provision does nothing to undermine the conclusion that terms calling for binding arbitration between a developer, condominium owners, and an owners association are properly included in a recorded declaration. (See Cal. Code Regs., tit. 10, § 2791.8.) As explained above, giving force to such terms in a development’s originating declaration protects the expectations of the individual owners and the community as a whole (Citizens for Covenant Compliance, supra, 12 Cal.4th at p. 364), as well as those of the developer (Civ. Code, § 1356, subd. (e)(2)).
Finally, we see nothing in Treo @ Kettner Homeowners Assn. v. Superior Court (2008) 166 Cal.App.4th 1055 [83 Cal.Rptr.3d 318] {Treo) that compels a different result. In Treo, the CC&R’s of a condominium development contained a requirement that all disputes between a developer and a homeowners association be decided by a general judicial reference. The question was whether that requirement was enforceable under Code of Civil Procedure *245 section 638, which allows appointment of a referee (and hence waiver of a jury trial) if a reference agreement exists between the parties. Relying on Grafton Partners v. Superior Court (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479] (Grafton), Treo determined that a waiver of the constitutional right to trial by jury requires “actual notice and meaningful reflection.” (Treo, supra, 166 Cal.App.4th at p. 1066.) Because the jury waiver in the subject CC&R’s did not meet those requirements, Treo held it was “not a written contract as the Legislature contemplated the term in the context of [Code of Civil Procedure] section 638.” (Treo, at p. 1067.) The Treo court was particularly troubled that the CC&R’s were lengthy and adhesive in nature, and that the jury waiver was not signed by the parties and could not be modified by the association. (Ibid.) Persuaded by Grafton's observation that any statutory ambiguity in permitting a jury waiver must be resolved in favor of affording a jury trial (Grafton, at p. 956), Treo concluded that, even though CC&R’s “can reasonably be ‘construed as a contract’ . . . when the issue involved is the operation or governance of the association or the relationships between owners and between owners and the association,” CC&R’s do not “suffice as a contract when the issue is the waiver pursuant to [Code of Civil Procedure] section 638 of the constitutional right to trial by jury.” (Treo, at p. 1066.)
The Association’s reliance on that decision is misplaced for at least two reasons. First, neither Treo nor Grafton concerned an agreement to arbitrate. Notably, Grafton explicitly distinguished predispute jury waivers from predispute arbitration agreements, observing that arbitration agreements are specifically authorized by Code of Civil Procedure section 1281, and, unlike jury waivers, “represent an agreement to avoid the judicial forum altogether.” (Grafton, supra, 36 Cal.4th at p. 955.) Because public policy strongly favors arbitration as “ ‘ “ ‘a speedy and relatively inexpensive means of dispute resolution’ ” ’ ” (Schatz v. Allen Matkins Leek Gamble & Mallory LLP, supra, 45 Cal.4th at p. 564), we decline to read additional unwritten procedural requirements, such as actual notice and meaningful reflection, into the arbitration statute.[10]
Second, whether or not a reference agreement must be evaluated differently from other types of agreements, state laws that discriminate against arbitration are preempted where, as here, the FAA applies. That is, the FAA precludes judicial invalidation of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses, such as proof of actual notice, meaningful reflection, signature by all parties, and/or a unilateral modification clause favoring the nondrafting party. *246 (Doctor’s Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 687-688 [134 L.Ed.2d 902, 116 S.Ct. 1652] (.Doctor’s Associates) [FAA preempts state’s first-page notice requirement for arbitration agreements].) It stands to reason that the FAA would preempt state decisional law singling out an arbitration clause as the only term in a recorded declaration that may not be regarded as contractual in nature. For this reason, we shall not selectively target article XVIII as containing the only clause of the recorded declaration that does not memorialize an agreement binding the Association.[11]
In sum, even though the Association did not bargain with Pinnacle over the terms of the Project CC&R’s or participate in their drafting, it is settled under the statutory and decisional law pertaining to common interest developments that the covenants and terms in the recorded declaration, including those in article XVIII, reflect written promises and agreements that are subject to enforcement against the Association. (Civ. Code, § 1350 et seq.; Nahrstedt, supra, 8 Cal.4th at pp. 378-384.)
C. The Doctrine of Unconscionability
Having determined that article XVIII of the Project CC&R’s is binding on the Association, we next determine whether the article’s provisions for arbitration are unenforceable as unconscionable.
“[Gjenerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening” the FAA. (Doctor’s Associates, supra, 517 U.S. at p. 687; accord, Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (Armendariz).) Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. (See Armendariz, at p. 114; Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979]' [procedural unconscionability “generally takes the form of a contract of adhesion”].) Substantive unconscionability pertains to the fairness of an agreement’s actual terms and to assessments of whether they are overly harsh or one-sided. (Armendariz, at p. 114; Mission Viejo Emergency Medical Associates v. Beta Healthcare Group (2011) 197 Cal.App.4th 1146, 1159 [128 Cal.Rptr.3d 330].) A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be “so one-sided as to ‘shock the conscience.’ ” (24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213.)
*247 The party resisting arbitration bears the burden of proving unconscionability. (Engalla v. Permanente Medical Group, Inc., supra, 15 Cal.4th at p. 972; Mission Viejo Emergency Medical Associates v. Beta Healthcare Group, supra, 197 Cal.App.4th at p. 1158.) Both procedural unconscionability and substantive unconscionability must be shown, but “they need not be present in the same degree” and are evaluated on “ ‘a sliding scale.’ ” (Armendariz, supra, 24 Cal.4th at p. 114.) “[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.” (Ibid.)
As indicated, procedural unconscionability requires oppression or surprise. “ ‘Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.’ ” (Morris v. Redwood Empire Bancorp (2005) 128 Cal.App.4th 1305, 1317 [27 Cal.Rptr.3d 797].) Here, the trial court found no evidence of surprise.[12] Nonetheless, the court perceived a high degree of procedural unconscionability, because the Project CC&R’s were drafted and recorded by Pinnacle before any unit was purchased and before the Association was formed. Noting the Association had no opportunity to participate in the drafting of the recorded declaration, the court determined it was oppressive. (See Villa Milano, supra, 84 Cal.App.4th at p. 828 [finding procedural unconscionability “obvious” where condominium purchasers had no opportunity to negotiate declaration’s terms].) This analysis is off the mark.
That the Project CC&R’s were drafted and recorded before the sale of any unit and without input from the Association was a circumstance dictated by the legislative policy choices embodied in the Davis-Stirling Act. (Civ. Code, § 1352; see Bus. & Prof. Code, §§ 11018.1, 11018.2, 11018.5, subd. (c).) The intent of the Act is to permit landowners such as Pinnacle to develop and market their properties to purchasers as condominium developments operating under certain CC&R’s. By providing for Pinnacle’s capacity to record a declaration that, when accepted by the first purchaser binds all others who accept deeds to its condominium properties, the Act ensures that the terms *248 reflected in the declaration—i.e., the covenants, conditions, and restrictions’ governing the development’s character and operation—will be respected in accordance with the expectations of all property owners and enforced unless proven unreasonable. (Nahrstedt, supra, 8 Cal.4th at pp. 378-384; see Citizens for Covenant Compliance, supra, 12 Cal.4th at p. 365.) Thus, while a condominium declaration may perhaps be viewed as adhesive, a developer’s procedural compliance with the Davis-Stirling Act provides a sufficient basis for rejecting an association’s claim of procedural unconscionability.[13]
Moreover, the arbitration provisions of article XVIII are not substantively unconscionable. Preliminarily, we observe the Association has not shown that article XVIII fails to conform to the minimum regulatory standards for protection of the public interest. (Cal. Code Regs., tit. 10, § 2791.8; see ante, fn. 7.) Here, in fact, the Department of Real Estate reviewed and approved the Project CC&R’s before issuing the required public report for the Project. (Bus. & Prof. Code, §§ 11004.5, subd. (c), 11018.2, 11018.5.) On this point, the Association correctly asserts that neither the public report’s issuance nor the regulation itself binds us in determining enforceability of the arbitration provisions. Nonetheless, as discussed below, the Association neglects to identify any aspect of article XVIII that is overly harsh or so one-sided that it shocks the conscience. (24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213.)
In arguing that article XVIII is substantively unconscionable, the Association invokes the following passage in Armendariz, supra, 24 Cal.4th 83: “[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.” (Id. at p. 120.) The Association then posits that article XVIII lacks basic fairness and mutuality because it allows Pinnacle to require arbitration of all construction disputes related to the Project, without requiring Pinnacle to arbitrate any claims it may have against the Association or the owners. This contention fails to persuade.
In the same part of Armendariz, we made clear that arbitration clauses may be limited to a specific subject or subjects and that such clauses are not required to “mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability.” (Armendariz, supra, 24 Cal.4th at p. 120.) Here, the challenged clause is limited to construction disputes. To the extent Pinnacle wishes to allege the *249 Association’s comparative fault as an affirmative defense with respect to damages (Civ. Code, § 1368.4, subd. (a)),[14] such issue would fall within the scope of article XVIII. Apart from that, the Association fails to identify any potential construction-related claim Pinnacle might assert against it that would not be subject to arbitration. Accordingly, there appears no support for the Association’s claims of unfairness and absence of mutuality.
The Association next complains of a clause in article XVIII that provides: “Each of the parties shall bear its own attorney’s fees and costs (including expert witness costs) in the arbitration.” Notwithstanding the facial neutrality of this costs provision, the Association asserts it is evidence of substantive unconscionability because it effectively limits the Association’s right to full recovery of damages. (See Armendariz, supra, 24 Cal.4th at p. 121.)
The costs provision does no such thing. In court proceedings, a prevailing party generally may not recover expert witness fees as an item of costs unless the expert witness was appointed by the court. (Code Civ. Proc., § 1033.5, subd. (b)(1); Carwash of America-PO v. Windswept Ventures No. I (2002) 97 Cal.App.4th 540, 543-544 [118 Cal.Rptr.2d 536]; Stearman v. Centex Homes (2000) 78 Cal.App.4th 611, 623-624 [92 Cal.Rptr.2d 761]; cf. Code Civ. Proc., § 1033.5, subd. (a)(8) [“[flees of expert witnesses ordered by the court” are allowable as costs].) By its terms, the costs provision will neutrally benefit whichever party does not prevail in arbitration by barring the prevailing party from recovering such fees as an item of costs. At the same time, article XVIII elsewhere specifies that “[flhe arbitrator is authorized to provide all recognized remedies available at law or in equity for any cause of action.” Pinnacle confirms that the costs provision does not alter the Association’s “potential remedies as a litigant,” and that the Project CC&R’s “were drafted so that the parties’ remedies would not change.” Accordingly, the costs provision does not limit the availability of expert investigation expenses that are otherwise recoverable as damages. (E.g., Stearman, at pp. 624—625 [even when expert witness fees are not recoverable as costs, expert investigation fees may be recovered as an item of damages under Civ. Code, § 3333].) In light of the foregoing, the costs provision provides little, if any, evidence of substantive unconscionability. (See Madden v. Kaiser Foundation Hospitals (1976) 17 Cal.3d 699, 711 [131 Cal.Rptr. 882, 552 P.2d 1178] [upholding an arbitration provision that did not purport to limit a party’s substantive obligations or liabilities, but “merely substitute[d] one forum for another”]; see also Ruiz, supra, 50 Cal.4th at p. 852.)
*250 The Association further points out that the Project CC&R’s impose a requirement that the Association obtain Pinnacle’s written consent before amending the arbitration provisions. Emphasizing that Pinnacle drafted the document before the Association existed as an independent entity, the Association claims the consent provision demonstrates that Pinnacle was “looking after its own self-interests” and playing “unfairly to its unilateral benefit.” The Association also argues the consent provision “virtually eliminates the Association’s right to amend the [Project CC&R’s] pursuant to Civil Code sections 1355 and 1356.”
These arguments lack merit. First, Civil Code section 1355 specifically contemplates that a recorded declaration may restrict or even eliminate the authority of an owners association and owners to amend its terms. (Civ. Code, § 1355, subd. (b) [permitting amendment “[e]xcept to the extent that a declaration provides by its express terms that it is not amendable”].) Second, and more to the point, Civil Code section 1356 flatly prohibits a court from approving any amendment to a declaration that “[w]ould eliminate any special rights, preferences, or privileges designated in the declaration as belonging to the declarant, without the consent of the declarant.” (Civ. Code, § 1356, subd. (e)(2).) Far from evidencing substantive unconscionability, the consent provision reflects a restrictive term that the Legislature, for policy reasons, has determined is reasonably and properly included in a recorded declaration.
We conclude that article XVIII of the Project CC&R’s is consistent with the provisions of the Davis-Stirling Act and is not procedurally or substantively unconscionable. Its terms requiring binding arbitration of construction disputes are therefore enforceable.[15]
Conclusion and Disposition
Even when strict privity of contract is lacking, the Davis-Stirling Act ensures that the covenants, conditions, and restrictions of a recorded declaration—which manifest the intent and expectations of the developer and those who take title to property in a common interest development—will be *251 honored and enforced unless proven unreasonable. Here, the expectation of all concerned is that construction disputes involving the developer must be resolved by the expeditious and judicially favored method of binding arbitration.
We hold that article XVIII’s covenant to arbitrate is not unconscionable and is properly enforced against the Association. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with the views herein.
Cantil-Sakauye, C. J., Chin, J., Corrigan, J., and Liu, J., concurred.

 The condominium owners have easements over the Association’s property.

 Section 18.30 of article XVIII states in relevant part: “WAIVER OF JURY TRIAL AND RIGHT TO APPEAL. DECLARANT [PINNACLE], AND BY ACCEPTING A DEED FOR ANY PORTION OF THE TOWER ASSOCIATION PROPERTY, THE ASSOCIATION AND EACH OWNER, AGREE (I) TO HAVE ANY CONSTRUCTION DISPUTE DECIDED BY NEUTRAL ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT AND THE CALIFORNIA ARBITRATION ACT, TO THE EXTENT THE CALIFORNIA ARBITRATION ACT IS CONSISTENT WITH THE FEDERAL ARBITRATION ACT; (II) TO GIVE UP ANY RIGHTS THEY MIGHT POSSESS TO HAVE THE CONSTRUCTION DISPUTE LITIGATED IN A COURT OR JURY TRIAL; (IE) TO GIVE UP THEIR RESPECTIVE RIGHTS TO APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE APPLICABLE ARBITRATION RULES OR STATUTES. IF ANY PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, SUCH PARTY MAY BE COMPELLED TO ARBITRATE----”

 The Association does not dispute that section 8 of the purchase agreement and article XVIH of the Project CC&R’s together constitute an agreement to arbitrate between Pinnacle and the original condominium owners. Likewise, Pinnacle does not challenge the trial court’s determination that section 8 does not bind the Association, which was not a party to the purchase agreements.

 The CAA’s comprehensive statutory scheme also expresses a “ ‘ “ ‘strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.’ ” ’ ” (Schatz v. Allen Matkins Leek Gamble & Mallory LLP (2009) 45 Cal.4th 557, 564 [87 Cal.Rptr.3d 700, 198 R3d 1109].) In terms similar to the FAA, the CAA provides that “[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.” (Code Civ. Proc., § 1281.)

 Code of Civil Procedure section 1298.7 provides in relevant part: “In the event an arbitration provision is included in a contract or agreement covered by this title it shall not preclude or limit. . . any right of action to which Section 337.1 [(limitations period for patent design or construction defects)] or 337.15 [(limitations period for latent design or construction defects)] is applicable.”

 E.g., Civil Code sections 1352.5 (restrictive covenants may not violate Gov. Code, § 12955), 1353.5 (governing display of the U.S. flag), 1353.6 (governing display of noncommercial signs, posters, flags, or banners on or in an owner’s separate interest), 1353.7 (governing roof installation or repair), 1353.8 (governing low water-using plants and landscaping), 1353.9 (governing installation and use of electric vehicle charging stations), 1376 (governing installation and use of video or television antenna), 1360.2 (governing rental or leasing of separate interests), 1360.5 (governing pets).

 One of the primary objectives of the Department of Real Estate is the protection of the public interest with regard to offerings of subdivided lands. (See generally Frisella & Nichols, Department of Real Estate (2001) 17:2 Cal. Reg. L.Rep. 313.) Pursuant to its rulemaking authority (Bus. & Prof. Code, § 11001), the Real Estate Commissioner promulgated section 2791.8 of title 10 of the California Code of Regulations, which provides in relevant part: “(a) [A] provision in the covenants, conditions and restrictions setting forth terms, conditions and procedures for resolution of a dispute of claim between a homeowners association and a subdivider shall, at a minimum, provide that the dispute or claim resolution process, proceeding, hearing or trial to be conducted in accordance with” specified rules *243 regarding (1) “costs and fees,” (2) timely appointment of a neutral person to administer and preside over the dispute resolution process, (3) venue of the proceeding, (4) “prompt and timely commencement” and “prompt and timely conclusion” of the process, (5) conduct of the process “in accordance with rules and procedures that are reasonable and fair to the parties,” and (6) authority of the presiding neutral person to provide all recognized remedies available in law or equity for any cause of action that is the basis of the proceeding. (Cal. Code Regs., tit. 10, § 2791.8, subd. (a).) Although the regulation contemplates that an arbitration process in a declaration may be binding or nonbinding, a process that “provides or allows for a judicial remedy in accordance with the laws of this state” presumptively satisfies the regulation’s minimum terms. (Cal. Code Regs., tit. 10, § 2791.8, subd. (c).)

 In any event, the FAA’s applicability would preempt any statutory provision that specifically discriminates against arbitration. (Perry v. Thomas, supra, 482 U.S. 483; Southland Corp. v. Keating, supra, 465 U.S. 1; Shepard v. Edward Mackay Enterprises, Inc., supra, 148 Cal.App.4th at p. 1095.)

 Civil Code section 1363.830 provides in relevant part: “A fair, reasonable, and expeditious dispute resolution procedure shall at a minimum satisfy all of the following requirements: [f] (a) The procedure may be invoked by either party to the dispute. . . . [H . . . ffl (c) If the procedure is invoked by a member, the association shall participate in the procedure. [j[] (d) If the procedure is invoked by the association, the member may elect not to participate in the *244 procedure. If the member participates but the dispute is resolved other than by agreement of the member, the member shall have a right of appeal to the association’s board of directors. Q] (e) A resolution of a dispute pursuant to the procedure, that is not in conflict with the law or the governing documents, binds the association and is judicially enforceable. An agreement reached pursuant to the procedure, that is not in conflict with the law or the governing documents, binds the parties and is judicially enforceable, ffl . . . [][] (g) A member of the association shall not be charged a fee to participate in the process.” (See Civ. Code, § 1363.840 [setting forth a comparable procedure for “an association that does not otherwise provide a fair, reasonable, and expeditious dispute resolution procedure”].)

 Grafton also distinguished predispute jury waivers from the very type of predispute reference agreement at issue in Treo, noting that Code of Civil Procedure section 638 authorizes reference agreements. (Grafton, supra, 36 Cal.4th at p. 959.)

 Likewise, we shall not, as the Association urges, target the arbitration clause as the only covenant in the recorded declaration that requires ratification by the Association’s governing board in order to bind the Association and its members.

 We agree. The record reflects that the arbitration provisions of the Project CC&R’s appear in a separate article under a bold, capitalized, and underlined caption titled “ARTICLE XVIII CONSTRUCTION DISPUTES,” and within a separate section with the bold and underlined title, “Section 18.3. Resolution of Construction Disputes by Arbitration.” The provision referring to FAA applicability, and the provision describing the waivers of jury trial and right to appeal, are set forth in separate subsections of section 18.3, with the latter appearing in bold and capital letters. (See ante, fn. 2.) Additionally, the recitals on page 2 of the Project CC&R’s state, in capital letters, that article XVm of the declaration “refers to mandatory procedures for the resolution of construction defect disputes, including the waiver of the right to a jury trial for such disputes.”

 Indeed, if an association could avoid an arbitration covenant in a recorded declaration on the ground that it did not negotiate for the covenant, then it would follow that, notwithstanding the Act’s operation, the association would not be bound by any of the covenants, conditions, or restrictions in the declaration. The position is untenable.

 Pursuant to Civil Code section 1368.4, subdivision (a), an owners association’s recovery of damages in a construction defect action “shall be reduced by the amount of damages allocated to the association or its managing agents in direct proportion to their percentage of fault based upon principles of comparative fault.”

 We are aware that Villa Milano, supra, 84 Cal.App.4th 819, concluded that arbitration provisions in a recorded declaration are categorically unenforceable as unconscionable and against public policy in light of Code of Civil Procedure section 1298.7. (Villa Milano, at pp. 829-833.) Villa Milano, however, preceded Shepard v. Edward Mackay Enterprises, Inc., supra, 148 Cal.App.4th 1092, which held that the FAA, when applicable, preempts operation of that antiarbitration statute. (See ante, pt. A.) Thus, Villa Milano erred in relying on Code of Civil Procedure section 1298.7 as a basis for finding substantive unconscionability. (See Marmet Health Care Center v. Brown (2012) 565 U.S. _, _ [182 L.Ed.2d 42, 132 S.Ct. 1201, 1204].) We hereby disapprove Villa Milano Homeowners Assn. v. II Davorge, supra, 84 Cal.App.4th 819, to the extent it is inconsistent with any of the views expressed herein.