Filed 8/2/24  Rose v. SAS Retail Services CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COURTNEY ROSE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAS RETAIL SERVICES, LLC,<br><br>    Defendant and Appellant. | G063200<br><br>(Super. Ct. No. 30-2022-01292199)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Peter J. Wilson, Judge. Affirmed.

Littler Mendelson, Fermin H. Llaguno, Nolan McCready and Kimberly M. Shappley for Defendant and Appellant.

Blumenthal Nordrehaug Bhowmik De Blouw, Norman B. Blumenthal and Kyle R. Nordrehaug for Plaintiff and Respondent.

Plaintiff Courtney Rose filed a lawsuit under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.)[1] against her former employer, defendant SAS Retail Services, LLC (SAS). SAS moved to compel arbitration of the PAGA action based on an arbitration agreement Rose signed in May 2018. The trial court denied the motion on the ground the parties' arbitration agreement excluded all PAGA actions from compulsory arbitration. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2022, Rose filed a "representative action" complaint, in which she solely sought the recovery of civil penalties under section 2699 for SAS's alleged violations of sections 201, 202, 203, 204 et seq., 210, 218, 221, 226, subdivision (a), 226.7, 227.3, 510, 512, 558, subdivision (a)(1) and (2), 1194, 1197, 1197.1, 1198, and 2802; section 11040 of title 8 of the California Code of Regulations, subdivision 5(A)-(B); and "applicable Wage Order(s)."

SAS filed a motion seeking an order compelling Rose to submit her individual PAGA claims to binding arbitration and to dismiss or, in the alternative, stay, her nonindividual PAGA claims (the motion). The motion was supported by evidence showing, from April 23, 2018 until December 20, 2022, SAS employed Rose as a retail reset merchandiser.[2] The motion further established on May 4, 2018, Rose executed an arbitration agreement (the

_____

[1] All further statutory references are to the Labor Code.

[2] According to the declaration of Andrew Beros, submitted in support of the motion, "SAS is a retail services company, offering product placement, display design, shelf-stocking, and other services to retail clients throughout the United States."

2

Agreement) which provided in relevant part: "This Agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.). Except as it otherwise provides, this Agreement applies to any dispute arising out of or related to your employment . . . or termination of employment regardless of its date of accrual and survives after the employment relationship terminates. . . . Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. Except as otherwise stated in this Agreement, you and the Company agree that any legal dispute or controversy covered by this Agreement, or arising out of, relating to or concerning the validity, enforceability or breach of this Agreement, shall be resolved by final and binding arbitration." (Boldface omitted.) Section 2 of the Agreement included the following carve out provision: "Private attorney general representative actions under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law." (Boldface omitted.) Rose filed an opposition to the motion, arguing it should be denied because the Agreement excluded all PAGA actions and the instant lawsuit solely constituted a PAGA action.

The trial court denied the motion on the ground the Agreement did not include an agreement to arbitrate PAGA actions in any respect (whether with regard to individual PAGA claims or nonindividual PAGA

claims). The court stayed litigation of Rose's claims pending the completion of the arbitration of her coplaintiff's claims.[3] SAS filed a timely notice of appeal.

DISCUSSION

I.

GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"'Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the FAA [Federal Arbitration Act] (9 U.S.C. § 1 et seq.) recognize '"'arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended '"to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.]" [Citations.] The fundamental policy underlying both acts "is to ensure that arbitration agreements will be enforced *in accordance with their terms*." [Citations.] [¶] Arbitration is therefore a matter of contract.'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 226–227 (*Franco*).)

When considering the terms of a contract, we are guided by general principles of contract law including the goal of contract interpretation "'to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . "The words of a contract are to be understood in their ordinary and popular sense.'" [Citation.] Furthermore, "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if

---

[3] SAS successfully moved to compel Rose's coplaintiff Epiphany Seaman's claims to arbitration based on a different arbitration agreement. Neither Seaman's arbitration agreement nor the trial court's ruling on SAS's motion to compel Seaman's claims to arbitration is relevant to the resolution of this appeal.

4

reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)'" (*Franco, supra*, 39 Cal.App.5th at p. 227.)

Although the law favors contracts for arbitration of disputes between parties, the necessity for a voluntary agreement to arbitrate cannot be disregarded since no policy exists compelling individuals to accept the arbitration of controversies which they have not agreed to arbitrate. (*Franco, supra*, 39 Cal.App.5th at p. 227.) Courts will not infer a waiver of the right to jury trial in the absence of a clear agreement to submit a dispute to arbitration. (*Ibid.*)

"'"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration."'" (*Franco, supra*, 39 Cal.App.5th at p. 227.) "'"If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.'" (*Ibid.*)

Here, the parties did not offer any extrinsic evidence regarding the Agreement's meaning. We therefore review the court's order denying the motion under the de novo standard of review. (See *Franco, supra*, 39 Cal.App.5th at p. 227.)

II.

THE PARTIES DID NOT AGREE TO ARBITRATE PAGA ACTIONS

SAS argues the trial court erred by refusing to compel arbitration of Rose's individual PAGA claims because the Agreement only excludes from compulsory arbitration nonindividual PAGA claims. We disagree.

The Agreement broadly states, in section 1: "Except as it otherwise provides, [the] Agreement applies to any dispute arising out of or related to your employment with the Company." (Fn. omitted.) Section 1 also states, following the qualifier "[e]xcept as it otherwise provides," the "Agreement also applies, without limitation," to a wide array of specified statutory and common law "claims"; as pointed out by the trial court in its minute order, "[t]hat extensive list notably excludes any reference to PAGA claims."

Section 2 of the Agreement then provides in relevant part: "Private attorney general representative *actions* under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law." (Boldface omitted, italics added.) The Agreement never mentions PAGA claims, whether individual or nonindividual in form.

It is well established ""*every* PAGA action . . . is a representative action on behalf of the state."" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87, citing *Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, 387.) SAS does not contend otherwise. Instead, citing *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), SAS argues the Agreement's use of the term "representative" in section 2 should be interpreted as solely excluding nonindividual PAGA claims from compulsory arbitration.

In *Viking River*, *supra*, 596 U.S. at page 648, the United States Supreme Court explained the term "representative," when used in the context of a PAGA action, has two meanings: "In the first sense, PAGA *actions* are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State. But PAGA

6

*claims* are also called 'representative' when they are predicated on code violations sustained by other employees. In the first sense, "'*every* PAGA action is . . . representative'" and '[t]here is no individual component to a PAGA action,' [citation], because every PAGA claim is asserted in a representative capacity. *But when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims*, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA *claims* arising out of events involving other employees." (Third italics in original; first, second, and fourth italics added.)

The United States Supreme Court held, inter alia, the FAA preempts the rule established in the California Supreme Court's decision *Iskanian v. CLS Transportation Los Angeles, LLC, supra*, 59 Cal.4th 348, prohibiting the splitting of PAGA actions into individual and nonindividual claims through an agreement to arbitrate. (*Viking River, supra*, 596 U.S. at p. 662.) The *Viking River* court explained: "This prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.'" (*Id.* at p. 659.) "Consequently, under *Viking River*, employers may enforce an agreement mandating arbitration of a plaintiff's individual PAGA claim, even if the agreement does not require arbitration of the plaintiff's nonindividual claims." (*Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 796.)

In its minute order, the trial court acknowledged "under *Viking River*, if a plaintiff files a PAGA action based in part on Labor Code violations that he or she has actually suffered, the plaintiff can be compelled to

7

arbitrate the 'individual PAGA claim' if the parties' agreement to arbitrate includes such claims." (Boldface omitted.) The trial court, however, concluded the Agreement here did not include an agreement to submit such claims to binding arbitration.

The trial court explained: "When the Rose Arbitration Agreement as a whole is considered, as it must be, the plain language thereof leads to the conclusion that the parties intended to exclude all representative actions for civil penalties under PAGA. That is precisely what the agreement says, and what the parties thereby agreed to was entirely consistent with applicable California law at the time. Unlike in *Viking River*, here there is no agreement to arbitrate PAGA claims, or any portion of them, on any basis. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 [""a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit""]; see also *Viking River, supra*, 142 S.Ct. at 1918 [the first principle of FAA jurisprudence is that arbitration is strictly a matter of consent].)"

In its opening brief, SAS cites *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1288 (*Piplack*)*,* in support of its argument the parties agreed to arbitrate individual PAGA claims. But as pointed out by the trial court, "*Piplack* did not address the intention of the parties as expressed in their written agreement, and focused instead on the legal interpretation (and dissection) of a PAGA claim based on, and post, *Viking River*." [4]

---

[4] In addition, the agreement in *Piplack, supra*, 88 Cal.App.5th at page 1288, unlike the Agreement here, provided for the wholesale waiver of the plaintiffs' right to bring PAGA claims in any forum. That provision was found unenforceable, triggering the application of the agreement's severability provision. (*Ibid.*)

Here, we agree with the trial court the language of the Agreement does not support SAS's argument the parties agreed to arbitrate any aspect of a PAGA action. Section 2 excludes PAGA "actions"; the relevant portion of that section does not use the term "claims," confirming the parties intended a wholesale exclusion of PAGA actions from the Agreement's application.

Significantly, the parties' entered into the Agreement in 2018, before the United States Supreme Court decided *Viking River* in 2022. At the time Rose executed the Agreement, therefore, there was no division of arbitrable individual PAGA claims and nonarbitrable nonindividual (or "representative") PAGA claims recognized in the law. (See *Kim, supra*, 9 Cal.5th at p. 87 ["There is no individual component to a PAGA action because "'*every* PAGA action . . . is a representative action on behalf of the state'""].) It is not reasonable to conclude the parties intended the term "representative" in section 2 of the Agreement to solely refer to nonindividual PAGA claims, and not individual PAGA claims, when such a distinction did not apply in the law at the time the parties entered the Agreement.

It is the Agreement's use of the term "actions" in the portion of section 2 of the Agreement that addresses PAGA, and not the terms "claim" or "claims," as otherwise used in section 1 of the Agreement, however, that confirms the parties' mutual intent. Thus, even if we were to impute knowledge of *Viking River*'s holding to the parties at the time they entered the Agreement, section 2 of the Agreement excludes PAGA representative *actions* from compulsory arbitration, not only representative claims. The trial court therefore did not err by concluding the parties agreed to exclude PAGA actions, and all claims subsumed within them, from the scope of the Agreement.

9

## DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.