Filed 5/25/23  Nathaniel v. Greene Motors CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VIRGIL NATHANIEL,<br><br>    Plaintiff and Respondent,<br>v.<br><br>GREENE MOTORS, INC.,<br><br>    Defendant and Appellant. | A165056<br><br>(Solano County<br>Super. Ct. No. FCS056974) |

Appellant Greene Motors, Inc., prevailed before the state Labor Commissioner on wage claims brought by respondent employee Virgil Nathaniel.  When Nathaniel sought a de novo review of the commissioner's order, Greene Motors filed a petition to arbitrate the matter.  The trial court found that the parties' arbitration agreement was procedurally and substantively unconscionable and thus unenforceable, and Greene Motors appealed.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The record in this case is sparse and contains little detail about Nathaniel's employment relationship with Greene Motors, a car dealership known as Avery Greene Honda in Vallejo.  What we know is that Nathaniel applied for a job as a "Service–Advisor" with Greene Motors in fall 2015.  He

1

signed an arbitration agreement printed on his form employment application, as all applicants are required to do. The font size of the agreement and the low quality of the copy in the appellate record make it difficult to discern each word of the clause governing alternative dispute resolution.

Nathaniel was hired and in December 2015 he signed a second arbitration agreement as part of the "onboarding process," again because he was required to do so to work for Greene Motors. We gather from the parties' briefing in the trial court that this agreement was identical, "or nearly so," to the one contained in Nathaniel's employment application. A copy of the arbitration agreement Nathaniel signed in December 2015 appears in the record on a single page titled "AGREEMENTS." Nathaniel's signature appears after a paragraph titled "At Will Employment Agreement" that stated he agreed his employment and compensation were terminable at will. The remaining three-quarters of the page is filled with a single paragraph titled "Binding Arbitration Agreement." As with the arbitration agreement Nathaniel signed when he applied for the job, the font size and low quality of the copy of this agreement in the record make it difficult to discern each word of the agreement. No evidence was presented in the trial court describing whether or how the original agreement Nathaniel signed differed from the copy as it appears in the record.

In the petition to compel arbitration, however, the text of the agreement was set forth, and we quote it in its entirety:

> "I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment,

2

whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration. In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, representative, or joint action lawsuit or arbitration (collectively 'class claims'). I and the Company both agree that any challenge to the prohibition against consolidating the claims of others into a single proceeding, whether as a class, a representative action or otherwise, is a gateway issue and shall be determined by the Superior Court; and any substantive claims shall not be decided by the arbitrator until after the gateway determination is made by the Court. I further understand that I will not be disciplined, discharged, or otherwise retaliated against for exercising my rights under Section 7 of the National Labor Relations Act, including but not limited to challenging the limitation on a class, collective, representative, or joint action. I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by, any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure. I acknowledge

3

that the Company's business and the nature of my employment in that business affect interstate commerce.  I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.05[1] and all of the Act's other mandatory and permissive rights to discovery). However, in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court.  To the extent applicable in civil actions in California courts, the following shall apply and observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure section 631.8.  Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including, but not limited to, notions of 'just cause') other than such controlling law.  The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity.  Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code section 47(b).  As reasonably required to allow full use and benefit of this Agreement's modifications to the Act's[2] procedures, the arbitrator shall extend the times set by the Act for the giving of notices and settings of hearings.  Awards shall include the arbitrator's written reasoned opinion.  If Section 1284.2 of the Code of Civil Procedure conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of Section 1284.2.  Both the Company and I agree that any arbitration

---

[1] Code of Civil Procedure section 1283.05 provides for obtaining depositions and other discovery if the parties incorporate the statute's provisions into their arbitration agreement (Code Civ. Proc., § 1283.1, subd. (b)).  All undesignated statutory references are to the Code of Civil Procedure.

[2] By this point the agreement had named six legislative acts, but none of them were specifically defined as "Act."  It appears this was a reference to the California Arbitration Act.

proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3–4) even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure 1281.2(c)."

Below this paragraph are the following two acknowledgements:

*"I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY."*

*"Should any term or provision, or portion thereof, be declared void or unenforceable it shall be severed and the remainder of this agreement shall be enforced. I hereby acknowledge that I have read the above statements and understand the same."*

A copy of the original one-page agreement is attached as Exhibit A to Greene Motors's petition to arbitrate, and Nathaniel's signature appears at the bottom of the page.

The human resources administrator for Greene Motors attested that Nathaniel "was given all the time he needed to review these documents," and he "was not rushed in signing these arbitration agreements, was provided an opportunity to ask questions about the agreement, and was free to seek outside counsel in connection with signing the arbitration agreement." Nathaniel did not ask questions about the agreements or seek additional advice about signing them.

At some point Nathaniel raised complaints about overtime wages, meal-period premium wages, liquidated damages, and waiting-time penalties. All we know about those complaints is that a Berman hearing was held before the Labor Commission, which denied relief to Nathaniel in an

5

order dated April 29, 2021. So far as this court can tell, neither party sought to arbitrate the matter in lieu of the Berman hearing.

In the order denying relief, Nathaniel was notified that the order would "become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court [which was identified as the Solano County Superior Court] within ten (10) days." (Lab. Code, § 98.2, subd. (a).) Using a state-approved form, Nathaniel filed an appeal for a de novo review of the order in the Solano County Superior Court.

Greene Motors then filed a petition to compel arbitration in the trial court, arguing that Nathaniel's "filing of his appeal in this Court was squarely inconsistent with an intent to submit his disputes to binding arbitration." Nathaniel opposed the petition, arguing that the arbitration provisions were procedurally and substantively unconscionable. The trial court agreed with Nathaniel and denied the petition to compel.

## II.
### DISCUSSION

Greene Motors argues that the trial court erred when it denied the petition to compel arbitration. We are not persuaded.

*A. General Principles and the Standard of Review.*

The Federal Arbitration Act (FAA, 9 U.S.C. § 1 et seq.) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The FAA expresses favor for arbitration agreements. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235 (*Pinnacle*).) "In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration." (*Id.* at p. 236.)

6

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Pinnacle, supra*, 55 Cal.4th at p. 236.) Nathaniel does not dispute that he signed an arbitration agreement with Greene Motors or that if the agreement were valid it would cover his claims. He argues solely that the agreement was unconscionable.[3]

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of

---

[3] In *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic I*) our State Supreme Court held that arbitration agreements requiring employees to waive Berman hearings were categorically unconscionable. But the Court also held that arbitration agreements could be enforced on appeals from Berman rulings. (*Id.* at p. 669.) The judgment in *Sonic I* was vacated by the United States Supreme Court, and the matter was remanded for consideration in light of *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333. On remand, our Supreme Court held that an arbitration agreement is not categorically unconscionable solely because it entails a waiver of the Berman procedure, and that an agreement to arbitrate wage disputes can be enforceable so long as it provides an accessible and affordable process for resolving those disputes. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146.) The parties do not argue, and we therefore do not decide, whether employers may forfeit their right to compel arbitration of a Berman appeal when they fail, as Greene Motors failed here, to seek to compel arbitration of the Berman hearing.

whether they are overly harsh or one-sided.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) Both procedural and substantive unconscionability must be shown to establish the defense. (*Ibid.*)

The doctrine of unconscionability ensures that contracts, particularly those of adhesion, do not impose terms that are overly harsh, unduly oppressive, or are so one-sided as to shock the conscience. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).) It does not, however, encompass a simple bad bargain. (*Id.* at p. 911.) "An evaluation of unconscionability is highly dependent on context." (*Ibid.*) "The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision." (*Ibid.*) "[T]he substantive unfairness of the terms must be considered in light of any procedural unconscionability. The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Id.* at p. 912.)

"Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) We review the trial court's order denying arbitration and not its reasoning, affirming it if it is correct on any theory that may be found in the record. (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686.)

*B. The Trial Court Correctly Found Procedural Unconscionability.*

Greene Motors first argues that Nathaniel "failed to establish a high degree of procedural unconscionability." (Formatting omitted.) Even if we agreed that the level of procedural unconscionability was not extreme, we conclude that Nathaniel established sufficient procedural unconscionability.

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is

8

standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 126.) The question then becomes "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. (*Ibid.*) " ' " '*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*Ibid.*) Where a party had no ability to individually negotiate a contract's terms, could not opt out of an arbitration provision, and thus had no meaningful choice but to accept an arbitration provision as drafted by the other party, this establishes at *least* a minimal level of procedural unconscionability. (*Bakersfield College v. California Community College Athletic Assn.* (2019) 41 Cal.App.5th 753, 762–763.) "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*).)

The trial court acknowledged that Nathaniel did not produce evidence about the circumstances under which he was presented with the arbitration agreements and asked to sign them. The court concluded, though, that "a facial review" of the agreements revealed "that both are complex, difficult to read and contain lengthy run-on sentences that are not separated by topic or paragraph. Each utilizes a small font. The language itself is replete with

9

significant legal[ese] and numerous references to state and federal statutes. The language utilized is intended for lawyers, not an unsophisticated applicant or employee." The court concluded that "[t]he document speaks for itself," and its language and presentation supported a finding of procedural unconscionability.

On appeal, Greene Motors does not dispute that the agreements Nathaniel signed were adhesive. It acknowledges that the agreements "therefore bear some degree of procedural unconscionability." Rather than directly addressing the trial court's reasons for finding procedural unconscionability, the company focuses on the arguments Nathaniel made below when he opposed the petition to compel arbitration.

It may be true that the long, run-on, legalistic second agreement that Nathaniel signed is clearly titled "Binding Arbitration Agreement," as Greene Motors stresses. And the acknowledgement at the bottom of the document that Nathaniel gives up his right to jury trial is in bold text and is legible, in contrast to the substantive terms of the agreement that are in small type. But these arguments sidestep the actual reasons the trial court articulated in concluding that the agreement is procedurally unconscionable. We agree with the trial court that the agreement Nathaniel signed is printed in small font, the run-on sentences are poorly organized, and the text is written for lawyers, not layperson job applicants. These facts support a finding of surprise. (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 128 [agreement was "a paragon of prolixity," was "written in an extremely small font," and the "single dense paragraph" was " 'visually impenetrable' and 'challenge[d] the limits of legibility' "].) Because Greene Motors acknowledges some procedural unconscionability and does not challenge the trial court's findings that also

10

support finding procedural unconscionability, we proceed to examine whether the agreement was substantively unconscionable.

   *C. The Trial Court Correctly Found Substantive Unconscionability.*

   Greene Motors contends that the trial court also erred when it concluded that the arbitration agreement was substantively unconscionable. Although this is a closer question, we are guided by *OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th 111, and agree with the trial court that the agreement is substantively unconscionable.

   "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.]  A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' "  (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.)  Under *Armendariz*, arbitration of claims under the California Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.) is subject to certain minimal requirements:  (1) the arbitration agreement may not limit damages otherwise available under the statute, (2) there must be sufficient discovery to adequately arbitrate the claim, (3) there must be a written arbitration decision with judicial review sufficient to ensure that arbitrators comply with statutory requirements, and (4) the employer must pay all types of costs that are unique to arbitration. (*Armendariz*, *supra*, 24 Cal.4th at pp. 103, 106, 113.)  These requirements apply to wage claims.  (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 128 & fn. 9.)

   The trial court concluded that the arbitration agreement was substantively unconscionable because it failed to address where to initiate arbitration, failed to afford discovery, and impermissibly shifted the expense

11

of arbitration to the employee while preserving Greene Motors's right to file costly and extensive motions (i.e., demurrer and motion for summary judgment). Although we agree with Greene Motors that the agreement's reference to section 1283.05 (covering depositions and other discovery in arbitration) and its "mandatory and permissive rights to discovery" provided sufficient discovery rights,[4] we conclude that other reasons cited by the trial court properly support a determination that the agreement is substantively unconscionable.

To begin with, we agree with the trial court that the arbitration agreement's failure to specify where or how the employee is to initiate arbitration supports a determination of substantive unconscionability. The agreement asserts that Greene Motors "utilizes a system of alternative dispute resolution which involves binding arbitration," but it provides no explanation on how the employee is supposed to access any such system. Greene Motors maintains there is generally no requirement for such a specification and that parties may petition the court to select an arbitrator when they are uncertain how to engage one. (§ 1281.6; see *American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 199.) But this ignores that the Supreme Court has made clear that circumstances and context are particularly important in evaluating unconscionability in cases, such as this

---

[4] Nathaniel contends that section 1283.05 is "limited by" section 1283.1. Section 1283.1 mandates that section 1283.05 be conclusively incorporated into any arbitration agreement covering wrongful death of another, whether or not the statute is specifically mentioned. (§ 1283.1, subd. (b).) But an agreement can specifically incorporate the terms of section 1283.05, which was done here. (§ 1283.1, subd. (b).) True, section 1283.05 may not provide "the full panoply of discovery," as Nathaniel argues. But even in the employment context, parties to arbitration are "permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05." (*Armendariz*, *supra*, 24 Cal.4th at pp. 105–106.)

one, involving an employee's wage claim. (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 136; see *Sanchez*, *supra*, 61 Cal.4th at p. 911.)

*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th 111, provides significant guidance on how to evaluate the agreement here because it involved the fairness of an agreement, strikingly similar to the one at issue here, that was used to try and compel the arbitration of an employee's wage claims in lieu of a Berman hearing. (*Id.* at pp. 117–118.) *OTO* concluded that the agreement's failure to explain how to initiate arbitration or to specify a commercial arbitration provider were significant factors causing the agreement to be substantively unconscionable. (*Id.* at p. 131.) The court observed that the "agreement does not mention how to bring a dispute to arbitration, nor does it suggest where that information might be found. Commercial arbitration providers, for example, frequently provide standardized forms to start the process. Employees can also contact the provider for information on claim initiation. The agreement here, however, identifies no commercial providers. In fact, it does not mention that such providers exist." (*Ibid*, fn. omitted.) In addition, the court observed that the agreement "mandates that the arbitrator be a 'retired California Superior Court Judge' but gives no indication how an employee might find such a person, let alone one willing to arbitrate a wage claim." (*Ibid.*) The arbitration agreement here has the same omissions and includes the identical reference to a retired superior court judge. As the court in *OTO* pointed out, these omissions and references reflect substantive unconscionability because they mean that some employees "may be so confused by the agreement that they are deterred from bringing their wage claims at all." (*Ibid.*)

The confusing nature of the terms here was exacerbated by other circumstances in this case. Greene Motors did not seek to compel arbitration

13

in lieu of the Berman hearing itself, leaving the impression that it was not interested in pursuing arbitration. And, under the order resulting from the Berman hearing, Nathaniel was correctly told that he was *required* under Labor Code section 98.2 to file a notice of appeal within 10 days or the order issued after the Berman hearing would have become a final and enforceable judgment.

Under these circumstances, Nathaniel cannot reasonably have been expected to discern, much less navigate, the arbitration agreement's murky arbitral procedures. Greene Motors itself seems uncertain on precisely what Nathaniel should have done. In its petition in the trial court, it took the position that Nathaniel's filing of the notice of appeal was in "repudiation" of the arbitration agreement, suggesting that Nathaniel should not have filed the notice. We flatly reject any such suggestion since Labor Code section 98.2, subdivision (a) requires the filing of a notice of appeal to preserve a challenge to an order resulting from a Berman hearing.

We also agree with the trial court that the arbitration agreement's cost provision evinces substantive unconscionability. The provision is convoluted and drafted in a way to favor Greene Motors. To reiterate, the agreement provides that "[i]f Section 1284.2 of the Code of Civil Procedure [providing that parties to arbitration pay their own share of costs] conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of Section 1284.2." Section 1284.2 states, "Unless the arbitration agreement provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not

14

including counsel fees or witness fees or other expenses incurred by a party for his own benefit." But under *Armendariz*, section 1284.2's cost-sharing terms do *not* apply in employment cases, such as this one. (*Armendariz*, *supra*, 24 Cal.4th at p. 113.)

Thus, the agreement's passage creates both procedural and substantive unconscionability concerns. In discussing the procedural unconscionability of an identical term, *OTO* explained that "[i]t is difficult to envision that [the employee] would have had any idea what the cited code section says or that a 13-year-old case creates a relevant exception to it. . . . It would have been nearly impossible to understand the contract's meaning without legal training and access to the many statutes it references."[5] (*OTO, L.L.C. v. Kho*, 8 Cal.5th at p. 129.) In addition to procedural unconscionability, the provision evinces substantive unconscionability. The convoluted passage's references to section 1284.2 and the mandatory use of a retired superior court judge deter employees from filing arbitration claims because they incorrectly suggest that the employees might be required to pay a portion of arbitration costs.

We recognize that a Berman hearing took place in this case and rendered a decision in favor of Greene Motors. We accept the company's point that the procedural posture of this case is thus different from the procedural posture in *OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th 111, which makes this case perhaps a closer call. Greene Motors contends the distinction

---

[5] This may be what the trial court was getting at when it found that the agreement "inappropriately shifts the expense of an arbitration to the employee." In other words, one possible interpretation of the agreement is that the employee must bear his or her costs. We agree with Greene Motors that, taking into account the caselaw not mentioned in the agreement, the clause cannot be fairly read to shift expenses to Nathaniel.

means it did not use the arbitration agreements "to effectuate a waiver of Berman rights or the replacement of simplified administrative claims with the complexities of civil litigation." But the procedures in a de novo review have some apparent advantages for the employee that do not appear available in Greene Motors's opaque "system of alternative dispute resolution." (See, e.g., *OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 123 [procedures permit "the [Labor C]ommissioner to represent claimants on appeal and facilitate award collection"].) We reject the notion that the arbitration agreement, which under *OTO* clearly would have been unenforceable at the Berman hearing stage of the proceedings, has somehow become enforceable at the de novo stage of the proceedings.[6]

Finally, it does not appear that Greene Motors requested in the trial court that any part of the arbitration agreement be severed in the event that the court found unconscionability. And since the company likewise has not advanced any severance argument in this court, we need not consider the issue.

## III.
## DISPOSITION

The trial court's order denying the petition to arbitrate is affirmed. Nathaniel shall recover his costs on appeal.

---

[6] After briefing was complete in this case, Division Eight of the Second Appellate District filed two cases enforcing arbitration agreements between car dealerships and their employees because the agreements lacked substantive unconscionability. (*Basith v. Lithia Motors, Inc.* (2023) 90 Cal.App.5th 951, 953; *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 923.) These cases are distinguishable because they did not involve wage claims or implicate the Berman process. (*Basith* at p. 953 [plaintiff sued dealership "for firing him"]; *Fuentes* at p. 926 [plaintiff sued "for discrimination and wrongful termination"].)

16

 

                                       _____
                                       Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Swope, J.*

      \*Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Nathaniel v. Green Motors, Inc.* A165056