Filed 4/24/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CRAIG STOKER, | B344945 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23STCV28816) |
| v. | |
| BLUE ORIGIN, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cherol J. Nellon, Judge.  Affirmed.

Davis Wright Tremaine, Thailia K. Sundaresan, Emilio G. Gonzalez, and Arielle J. Spinner for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian, William Reed, Anna Levine-Gronningsater, Justin Shegerian, and Jill McDonnell for Plaintiff and Respondent.

Gutierrez, Preciado & House and Calvin House for Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Appellants.

———————————————

Plaintiff Craig Stoker was employed by defendant Blue Origin, LLC from 2020 to 2022. After he was terminated, Stoker sued Blue Origin and others (collectively, Blue Origin) for a variety of employment claims, including sexual harassment in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Blue Origin moved to compel arbitration of Stoker's claims under a contractual arbitration agreement, and Stoker opposed the motion, urging that the complaint alleged a "sexual harassment dispute" within the meaning of the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA; 9 U.S.C. § 402, subd. (a)), and the arbitration provision was substantively and procedurally unconscionable. The trial court concluded that the EFAA applied, and thus Stoker could not be compelled to arbitrate his claims. Blue Origin appealed.

We affirm. As we discuss, the arbitration agreement is substantively and procedurally unconscionable, and severance is not appropriate in this case. We therefore affirm the order denying the motion to compel arbitration without considering the applicability of the EFAA to Stoker's claims.

2

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Stoker's employment with Blue Origin.

Blue Origin is a space exploration company that develops rockets, engines, and spacecraft. It hired Stoker as a senior director of program management in August 2020. When Stoker was hired, he signed an employee agreement governing his relationship with Blue Origin. As relevant here, section 6 of the agreement required arbitration of many disputes that might arise between the parties (the arbitration agreement), and section 7 contained severability and choice-of-law provisions. The issues raised in this appeal pertain to the arbitration agreement, and thus we describe its provisions in some detail.

Section 6.1 describes the scope of the agreement to arbitrate, as follows:

"I understand and agree that all claims, disputes, or controversies relating to or arising out of my employment with the Company, except for the Excluded Claims listed below, shall be determined by binding arbitration before a single, neutral arbitrator. For purposes of this Arbitration Agreement under Section 6, the term 'Company' includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents.

"This arbitration agreement applies to any and all claims, disputes, or controversies between the Company and me, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement, tort claims, breach of contract claims, wage and hour claims including without limitation

under the Fair Labor Standards Act, the Washington Minimum Wage Act and other Washington wage and hour statutes, and any other federal, state, and local wage and hour statutes, fee claims, claims under federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship, and any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance (collectively 'Covered Claims'), except for the following Excluded Claims:

"(i) claims for unemployment benefits;

"(ii) claims for workers' compensation benefits;

"(iii) claims for sexual harassment or sexual assault, except if I choose voluntarily to arbitrate them under this Agreement;

"(iv) claims that governing federal law, or a benefits-plan policy, prohibits from being arbitrated;

"(v) claims for equitable relief alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements for which either party may seek equitable relief such as a temporary restraining order or preliminary injunction from a court of competent jurisdiction, prior to arbitrating the claim(s); and

"(vi) actions to confirm, vacate, modify, or correct an arbitrator's award."

Section 6.3 of the agreement waives Stoker's right to pursue class or representative claims against Blue Origin. It says: "The Company and I will resolve Claims only on an individual basis. This means that no Claims, including arbitration of Covered Claims or cause of action in court for

4

Excluded Claims, will be initiated or maintained as a class action, collective action, consolidated action, representative action, or multi-party actions (together 'Collective Actions'). The Company and I waive the right to participate in, or receive money or other relief from, a Collective Action. Neither the Company nor I may bring a Claim on behalf of others. No arbitrator or judge may combine more than one individual's Claim(s) into a single arbitration or court proceeding without all parties' written consent. Under the terms of this Agreement, no arbitrator or judge may: (i) order or permit any arbitration-related notice or information to be sent to any class, collective, representative or consolidated group; or (ii) require a party to produce any contact information for any class, collective, representative, or consolidated group.

"FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT ANY SUCH CLAIMS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY, AND THE COMPANY AND I WAIVE OUR RIGHTS TO ASSERT CLAIMS ON CLASS, COLLECTIVE, OTHER REPRESENTATIVE, OR MULTI-PARTY ACTIONS."

Section 6.4 of the agreement waives Stoker's right to a jury trial in any action against the company. It says: "I understand and agree that this binding arbitration procedure shall supplant and replace claims brought in state or federal court (except as specified in this Section), and that the Company and I expressly waive the right to a civil court action before a jury.

5

"FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT THE CLAIM SHALL BE TRIED TO THE COURT AND THAT ANY RIGHT TO JURY TRIAL IS WAIVED."

Section 7.2 of the agreement requires severance of any illegal provisions.  It says:  "This Agreement will be enforced to the fullest extent permitted by applicable law.  If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent under applicable law by a court of competent jurisdiction or in any arbitration proceeding, then (a) such provision will be interpreted, construed, modified, amended or reformed by the court or arbitrator to the minimum extent required to render the same valid, enforceable and consistent with the original intent underlying such provision, and (b) such invalidity or unenforceability will not affect any other provision of this Agreement or any other agreement between the Company and me.  If a court or arbitrator declines to modify, amend, or reform any such provision as provided for in this paragraph, such invalidity or unenforceability shall attach only to such provision or portion thereof, and shall not in any way affect or render invalid or unenforceable any other provision of this Agreement or portion thereof, and this Agreement shall be enforceable in full force and effect as if such invalid or unenforceable provision or portion thereof had not been included in this Agreement."

Finally, section 7.6 of the agreement provides that arbitration will be governed by the Federal Arbitration Act

(9 U.S.C. § 1 et seq.), and that any claims excluded from arbitration will be subject to the law of Washington state.

## II. Stoker's termination; the present action.

### A. Complaint.

Stoker was terminated in October 2022 after making a series of complaints about the company's safety practices. In November 2023, Stoker filed the present action alleging causes of action for retaliation, sexual/gender discrimination, sexual/gender harassment, failure to prevent discrimination and harassment, breach of contract, negligent hiring, wrongful termination, and intentional infliction of emotional distress.

### B. Motion to compel arbitration.

Blue Origin moved to compel arbitration. Blue Origin acknowledged that sexual harassment claims were not subject to mandatory arbitration under the arbitration agreement's terms and the EFAA, but it urged that Stoker's allegations were too "bare" to constitute sexual harassment as a matter of law. It also contended the arbitration agreement was neither procedurally nor substantively unconscionable.

Stoker opposed the motion to compel. He contended that the arbitration agreement was unenforceable under the EFAA because the complaint alleged a viable gender harassment dispute within the meaning of the statute. Alternatively, Stoker urged the arbitration agreement was procedurally unconscionable because it was a contract of adhesion, and it was substantively unconscionable because it required Stoker to arbitrate all claims (not merely those related to his employment) against Blue Origin and its parents, subsidiaries, affiliates, and current and former employees; excluded from arbitration those

claims Blue Origin was most likely to bring against Stoker, while including those claims Stoker was most likely to bring against Blue Origin; waived Stoker's right to bring a claim under the Private Attorneys General Act (Lab. Code, § 2698 et seq.); and contained an invalid choice-of-law provision, forum selection clause, and attorney fee provision.

The trial court concluded that the EFAA applied and, thus, it denied the motion to compel. The court noted that the complaint alleged that Stoker believed his safety complaints were ignored because of his gender—because Blue Origin's employees believed Stoker should " 'man up.' " Thus, "accepting Plaintiff's allegations as true, the Court finds that the facts alleged sufficiently state that Plaintiff suffered discrimination because of his gender." Because the trial court found the arbitration agreement was unenforceable under the EFAA, it did not consider whether it was also unconscionable.

Blue Origin timely appealed from the order denying the motion to compel arbitration.

## DISCUSSION

Blue Origin contends that the EFAA applies only if a sexual harassment claim is "plausibly" pled. It thus asserts the EFAA does not apply in the present case because although the complaint arguably pled a plausible claim of sexual *discrimination*, it did not plausibly plead a claim of sexual *harassment*. Alternatively, Blue Origin contends the arbitration agreement is not substantively or procedurally unconscionable.

Stoker urges that the EFAA does not require a sexual harassment claim be "plausibly" pled, but only that it be "nonfrivolous." In any event, Stoker contends the complaint states a claim for sexual harassment under either standard, and

8

thus the EFAA precluded the trial court from granting the motion to compel arbitration. Alternatively, Stoker asserts that the motion was properly denied because the arbitration agreement was procedurally and substantively unconscionable.

As we discuss, the arbitration agreement is both substantively and procedurally unconscionable, and its unconscionable elements cannot be severed. We therefore conclude that the arbitration agreement is not enforceable.[1] Because we so conclude, we do not consider whether the EFAA applies to this dispute.

## I.    Appealability and standard of review.

Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ."

" 'The trial court may resolve motions to compel arbitration in summary proceedings, in which . . . "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." ' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 763–764.) The party seeking to compel arbitration bears the burden of

---

[1]    Where the facts are undisputed, a Court of Appeal may consider unconscionability in the first instance. (*Pinela v. Nieman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 241.) We elect to do so here.

9

proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1106; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)

An order denying a petition to compel arbitration is an appealable order.  (Code Civ. Proc., § 1294, subd. (a).)  Because the evidence is not in conflict, our review is de novo.  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).)

## II.    The arbitration agreement is procedurally and substantively unconscionable.

### A.    Legal principles.

Arbitration agreements are contracts, and thus they are subject to generally applicable contract defenses, such as unconscionability.  (*Ramirez, supra*, 16 Cal.5th at p. 492; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*); *Pinnacle, supra*, 55 Cal.4th at p. 246.)  " 'A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' (*Kho, supra*, 8 Cal.5th at p. 125.)" (*Fuentes v. Empire Nissan, Inc.* (2026) 19 Cal.5th 93, 102–103 (*Fuentes*).)

Unconscionability has both a substantive and procedural element.  (*Fuentes, supra*, 19 Cal.5th at p. 103.)  " 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*Kho, supra*, 8 Cal.5th at p. 125.)  This element "is generally established by showing the agreement is a

10

contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Ramirez, supra*, 16 Cal.5th at p. 492.) Substantive unconscionability " 'pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' (*Pinnacle, supra*, 55 Cal.4th at p. 246.)" (*Kho*, at p. 125.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citation.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making." (*Kho, supra*, 8 Cal.5th at p. 125.) " 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Fuentes, supra*, 19 Cal.5th at p. 103.) The burden of proving unconscionability rests upon the party asserting it. (*Kho*, at p. 126.)

### B. The arbitration agreement is procedurally unconscionable.

We begin by considering whether the arbitration agreement is procedurally unconscionable.[2]  Our Supreme Court has explained that "there are ' "degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . .  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.  [Citation.]  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' " ' " (*Ramirez, supra*, 16 Cal.5th at pp. 493–494.)

A contract of adhesion is " 'a "standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity

---

[2]  "A court should consider substantive unconscionability only after procedural unconscionability has been established.  A 'conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries.' (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470.)" (*Ramirez, supra*, 16 Cal.5th at p. 494.)

to adhere to the contract or reject it." ' " (*Fuentes, supra*, 19 Cal.5th 93, 103.)  Our Supreme Court has explained that courts must be " ' "particularly attuned" ' " to the dangers posed by adhesive contracts in employment settings, where " ' "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." ' " (*Ramirez, supra*, 16 Cal.5th at p. 494.)  Courts have found employment contracts to be adhesive in a variety of contexts, including where an employee occupies a managerial position, if the employee had no real opportunity to modify the contract's terms.  (See, e.g., *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1267 [arbitration agreement was adhesive, even as to vice president of business development, because although plaintiff had opportunity to negotiate some of the terms of her employment, "she apparently had no opportunity to negotiate over the arbitration provision or the requirement that she sign a confidentiality agreement"]; *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981 [adhesive arbitration agreement was unconscionable (albeit only to a "low degree") with regard to employee who was a licensed attorney and highly compensated by employer]; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1534 [standard form employment contract containing an arbitration provision was adhesive because the plaintiff, although a highly compensated corporate executive, "appears to have had no realistic ability to modify the terms of the employment contract" because the contract's terms were "cast in generic and

13

gender neutral language" and "described as standard provisions that were not negotiable"].)[3]

In the present case, Stoker asserted in a declaration that when he was offered the position with Blue Origin in August 2020, Blue Origin's recruiter, Ben Baker, said Stoker would "have to sign an employment agreement as a term and condition of my employment." Baker represented that the employment agreement "contained 'standard terms,' that 'everyone has to sign to these terms,' and 'everybody always signs to these terms.' " Stoker asserted in his declaration that he had questions about the documents he was signing, but "Baker did not offer to answer any questions I had," and "[t]he way I was presented the agreement, and based on our prior discussions, it seemed that the terms that were not previously negotiated were nonnegotiable."

---

[3] Blue Origin asserts that California courts have consistently held that the mere fact that an agreement is presented on a " 'take-it-or-leave-it' basis does not, by itself, establish procedural unconscionability." The cases Blue Origin cites do not support this assertion. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 ["It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability"]; *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825 [notwithstanding plaintiff's stature in the music industry, arbitration agreement was adhesive and unenforceable "on grounds of unconscionability"]; see also *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1109 [employee can be discharged for refusing to sign a predispute arbitration agreement].)

14

In support of its motion to compel arbitration, Blue Origin did not present any evidence that the employee agreement was not adhesive—i.e., that Stoker had, or could have, negotiated the terms of the employee agreement. We therefore conclude on the basis of the undisputed evidence that the employee agreement was a contract of adhesion. Although adhesion alone "generally indicates only a low degree of procedural unconscionability," the potential for overreaching in the employment context "warrants close scrutiny of the contract's terms." (*Ramirez, supra*, 16 Cal.5th at p. 494.) We turn now to those terms.

## C. The arbitration agreement is substantively unconscionable.

Substantive unconscionability concerns "the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), " 'unduly oppressive' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925), " 'so one-sided as to "shock the conscience" ' " (*Pinnacle*[, *supra*,] 55 Cal.4th [at p.] 246), or "unfairly one-sided" (*Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th [1064], 1071.) All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' ' " (*Kho, supra*, 8 Cal.5th at pp. 129–130.)

Stoker contends that the arbitration agreement is substantively unconscionable because it is overbroad, lacks mutuality, waives Stoker's right to a jury trial, and waives the right to bring a representative claim under the Private Attorneys

15

General Act of 2003 (PAGA) (Lab. Code, § 2698 et seq.).  We agree.[4]

**_The arbitration agreement is overbroad._**  By its terms, the arbitration agreement applies (with some exceptions discussed below) "to _any and all claims, disputes, or controversies between the Company and me_, including, _without limitation_, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my employment . . . , tort claims [and] breach of contract claims."  (Italics added.)  " 'Company' " is defined to include not only Blue Origin, but also its "parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents."

The Court of Appeal found a similar arbitration provision substantively unconscionable in _Cook v. University of Southern California_ (2024) 102 Cal.App.5th 312, 321 (_Cook_).  There, an arbitration agreement entered into between the University of Southern California (USC) and an employee required the employee to arbitrate all claims against USC, regardless of subject matter.  (_Ibid._)  The trial court found the agreement unconscionably broad because it "applied to 'all' of [the employee's] claims regardless of whether they arose from her employment," and thus " 'for the rest of her life, if [the employee] were to suffer an injury related to USC or its related entities, [the employee] could be ordered to arbitrate such claims.' "  (_Id._ at

---

[4]  Stoker also contends the arbitration agreement is unconscionable because it provides that disputes must be resolved in Washington state under Washington law and includes a prevailing party attorney fees provision.  We do not address these issues.

16

p. 318.)[5]  The Court of Appeal agreed that the arbitration agreement was substantively unconscionable, explaining:  "If USC had been concerned about capturing termination or retaliation claims related to [an employee's] employment, it simply could have limited the scope of the agreement to claims arising out of or relating to her employment or termination.  It is difficult to see how it is justified to expect [the employee]—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for . . . claims that are completely unrelated to [her] employment." (*Id.* at p. 325.)

The present case is analogous to *Cook*.  As in that case, the arbitration agreement here is not limited to claims arising out of the employment relationship.  Instead, it applies to *any claim* that might arise *at any time* between Stoker and Blue Origin *or* its parent, subsidiaries, affiliates, successors or assigns, *or* employees of any of these entities.  Thus, for example, the arbitration agreement would apply if Stoker were to be injured in an automobile accident with another Blue Origin employee years after his employment ended, or if his house were damaged by debris from a Blue Origin rocket.  The arbitration provision's broad scope, thus, renders it substantively unconscionable.

Blue Origin contends that the arbitration agreement does not cover all claims between the parties, but "only employment-related claims between [Stoker] and Blue Origin."  In support,

_____

[5]      The trial court found that as drafted, the arbitration agreement would apply to claims completely unrelated to the employee's employment—such that, for example, if the employee was " 'the victim of a botched surgery in a USC hospital in 15 years, her claims could be subject to the arbitration agreement.' " (*Cook, supra,* 102 Cal.App.5th at p. 318.)

17

Blue Origin notes that that provision's expansive language—
"*'any and all claims, disputes, or controversies between the Company and me'*"—is narrowed by the clause that follows—
"*'including, without limitation, claims arising out of or relating to my employment.'*" Not so. Had Blue Origin intended to subject only employment-related claims to arbitration, it would have been a simple matter to say so. Instead, Blue Origin used far more expansive language—"any and all claims." Suffice it to say, "all" means all.

> ***The arbitration agreement applies to claims likely to be brought by Stoker, while excluding claims likely to be brought by Blue Origin.*** Courts routinely hold that employer-drafted arbitration agreements are unconscionable if they compel arbitration of claims most likely to be brought by employees, while exempting from arbitration claims most likely to be brought by the employer. For example, in *Ramirez*, *supra*, 16 Cal.5th at pp. 497–500, the court held that an arbitration agreement was substantively unconscionable because "a wide range of statutory and policy-based claims that would typically be initiated by an employee are directed into arbitration," but "only a small subset of claims that would typically be initiated by [employer] are similarly directed." The high court similarly concluded in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117–121 (*Armendariz*), holding unenforceable an arbitration agreement that applied only to employee wrongful termination claims. The court explained: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to

18

prosecute a claim against the employee . . . .  If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration.  Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage.  Arbitration was not intended for this purpose." (*Ibid.*; see also *Cook, supra,* 102 Cal.App.5th at p. 328 [trial court "did not err in holding the arbitration agreement was substantively unconscionable for lack of mutuality in the claims that are subject to arbitration"].)

In the present case, the arbitration agreement required arbitration of all claims except those specifically excluded.  The "Excluded Claims" are:

"(i) claims for unemployment benefits;

"(ii) claims for workers' compensation benefits;

"(iii) claims for sexual harassment or sexual assault, except if [the employee] choose[s] voluntarily to arbitrate them under this Agreement;

"(iv) claims that governing federal law, or a benefits-plan policy, prohibits from being arbitrated;

"(v) claims for equitable relief alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements for which either party may seek equitable relief such as a temporary restraining order or preliminary injunction from a court of competent jurisdiction, prior to arbitrating the claim(s); and

"(vi) actions to confirm, vacate, modify, or correct an arbitrator's award."

19

Workers' compensation and unemployment insurance claims "are excluded from arbitration by law" (*Ramirez, supra*, 16 Cal.5th at p. 498), as are—by definition—claims that federal law or a benefits-plan policy "prohibit[ ] from being arbitrated." Claims for sexual harassment and sexual assault are also excluded from mandatory arbitration under the EFAA. (9 U.S.C., § 402, subd. (a) ["at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute"].) And, petitions to confirm, vacate, modify, or correct an arbitrator's award must be decided by a "court." (Code Civ. Proc., § 1285.) Accordingly, the only exclusion from arbitration not compelled by statute are those set out in paragraph (v)—i.e., claims for relief "alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements."

Claims for trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information, confidentiality obligations, and non-solicitation agreements are most likely to be brought by an employer, not an employee. (See, e.g., *Ramirez, supra*, 16 Cal.5th at p. 498 [claims related to intellectual property rights and severance or noncompete agreements are "more likely to be employer-initiated"].) The arbitration agreement thus created a one-sided exemption from arbitration for claims likely to be initiated by Blue Origin.

20

(*Fuentes*, *supra*, 19 Cal.5th at pp. 107–108.) In contrast, under Blue Origin's arbitration agreement, a wide range of claims that typically would be initiated by an employee—including claims arising out of or relating to employment or termination of employment, wage and hour claims, claims under "federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship," and "any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance"—are specifically directed into arbitration. In short, the arbitration agreement created "a one-sided carveout for claims only [Blue Origin] would bring." (*Fuentes*, at p. 111.) This lack of mutuality renders the arbitration agreement substantively unconscionable.

***The arbitration agreement waives the right to a jury trial of any claims.*** The arbitration agreement provides: "I understand and agree that this binding arbitration procedure shall supplant and replace claims brought in state or federal court (except as specified in this Section), and that the Company and I expressly waive the right to a civil court action before a jury. [¶] FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT THE CLAIM SHALL BE TRIED TO THE COURT AND THAT ANY RIGHT TO JURY TRIAL IS WAIVED."

Predispute jury trial waivers are contrary to California public policy and, thus, unenforceable. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 950, 961 [holding

21

unenforceable a "predispute agreement that any lawsuit between [the parties to a contract] would be adjudicated in a court trial, and not by jury trial"]; see also *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 452 [waiver of right to a jury " 'in the event that any controversy or claim is determined in a court of law' " is "an unconscionable predispute jury trial waiver"]; *Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 107 [employment agreement that required plaintiffs "to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed" was substantively unconscionable].) Accordingly, the provision of the arbitration agreement purporting to waive the right to a jury in any action tried in court is substantively unconscionable.

*__The arbitration agreement waives the right to pursue any claims on a class or representative basis.__* Paragraph 6.3 of the arbitration agreement provides: "The Company and I will resolve Claims only on an individual basis. This means that no Claims, including arbitration of Covered Claims or cause of action in court for Excluded Claims, will be initiated or maintained as a class action, collective action, consolidated action, representative action, or multi-party action (together 'Collective Actions'). The Company and I waive the right to participate in, or receive money or other relief from, a Collective Action. Neither the Company nor I may bring a Claim on behalf of others. No arbitrator or judge may combine more than one individual's Claim(s) into a single arbitration or court proceeding without all parties' written consent. . . . [¶] FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION,

22

THE COMPANY AND I EXPRESSLY AGREE THAT ANY SUCH CLAIMS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY, AND THE COMPANY AND I WAIVE OUR RIGHTS TO ASSERT CLAIMS ON CLASS, COLLECTIVE, OTHER REPRESENTATIVE, OR MULTI-PARTY ACTIONS."

Although the United States Supreme Court has held that class action waivers are enforceable in cases to which the Federal Arbitration Act applies (see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 361 (*Iskanian*), discussing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344), the same is not true of representative PAGA actions. As to those actions, "a predispute categorical waiver of the right to bring a PAGA action is unenforceable." (*Adolph v. Uber Technologies, Inc*. (2023) 14 Cal.5th 1104, 1117; see also *Fuentes*, *supra*, 19 Cal.5th at p. 112, fn. 6 [when " 'an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law' "].) The arbitration provision's purported waiver of the employee's right to bring "representative" actions, including representative PAGA claims, thus is substantively unconscionable. (See *Hasty v. American Automobile Assn. etc*. (2023) 98 Cal.App.5th 1041, 1063 (*Hasty*) [ban on all representative PAGA actions is unconscionable "because it requires an employee to waive a right that is not waivable"]; *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 495 ["both before and after *Viking River Cruises*[, *Inc. v. Moriana*

23

(2020) 596 U.S. 639], blanket waivers of PAGA claims are unconscionable"].)[6]

For all the foregoing reasons, the arbitration agreement contains a high degree of substantive unconscionability. We therefore turn to the question of severance.

## III. Severance.

Civil Code section 1670.5, subdivision (a) provides that if a contract or any clause of a contract is unconscionable, the court may (1) "refuse to enforce the contract," (2) "enforce the remainder of the contract without the unconscionable clause"—i.e., sever any unconscionable clause, or (3) "limit the application of any unconscionable clause as to avoid any unconscionable result." (See *Ramirez*, *supra*, 16 Cal.5th at p. 513.)

Our Supreme Court has explained that in determining whether to sever or strike a contract with unconscionable terms, a court should consider the contract's purposes: "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of

---

[6] We note that for purposes of an unconscionability analysis, it is irrelevant that Stoker did not assert any PAGA claims. " 'In determining unconscionability, our inquiry is into whether a contract provision was "unconscionable *at the time it was made*." ' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1134, italics added; see also *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 882–883; *Hasty*, *supra*, 98 Cal.App.5th at p. 1063.)

24

severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at p. 124.)

In *Armendariz*, the court found that two factors weighed against severance of the unlawful provisions. First, the arbitration agreement contained more than one unconscionable provision, indicating a "systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.) Second, because the arbitration provisions were not mutual, there was "no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id.* at pp. 124–125.) Instead, the court would have had to augment the contract with additional terms, which it could not do under the statute. Accordingly, "[b]ecause a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (*Id.* at p. 125.)

In *Ramirez*, the high court affirmed the continued applicability of the *Armendariz* factors and further noted that even if a contract can be cured, a court should consider whether doing so would further the interests of justice. The court explained that this part of the inquiry "focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. [Citation.] If the answer to either question is yes, the court should refuse to enforce the agreement."

25

(*Ramirez*, *supra*, 16 Cal.5th at pp. 516–517.)  In conducting this analysis, *Ramirez* directs, a court "may also consider the deterrent effect of each option.  As *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035 explained, severing multiple unconscionable provisions from an agreement and enforcing the remainder could 'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place.' [Citation.]  Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." (*Ibid.*)  Finally, the court noted, if a contract contains a severance clause, a court "should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced.  [Citations.]  That said, we note that the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause." (*Ibid.*)

Applying these factors to the present case, we conclude that the entirety of the arbitration agreement is unenforceable.  Arguably, sections 6.3 and 6.4 of the agreement, which waive the right to a jury trial and to pursue representative claims, could be severed without doing violence to the rest of the agreement.  But section 6.1, which governs the kinds of claims subject to arbitration, is far more problematic.  As we have noted, that section requires arbitration of most claims between Stoker, on the one hand, and Blue Origin, its parent, subsidiaries, officers,

26

directors, employees, and agents, on the other, whether or not such claims pertain to Stoker's employment. This section's overbreadth could be corrected only by adding language limiting the provisions' reach to claims arising out of Stoker's employment—and as we have said, courts have no authority under governing law to cure unconscionable contracts through "reformation and augmentation." (*Armendariz, supra*, 24 Cal.4th at p. 125.)

Section 6.1 also exempts from arbitration claims most likely to be brought by Blue Origin, while requiring arbitration of claims most likely to be brought by Stoker. Eliminating these limitations to make the arbitration agreement fully mutual would have the effect of subjecting to arbitration categories of claims the parties did not agree to arbitrate. "Courts cannot, however, ' "rewrite agreements and impose terms to which neither party has agreed." ' " (*Ramirez v. Charter Communications, Inc.* (2025) 108 Cal.App.5th 1297, 1306 (*Ramirez II*) [declining to reform unconscionable agreement by excising exclusions from arbitration, "effectively rewriting the Agreement to cover claims [the parties] did not agree to arbitrate"].)

In any event, even if it were possible to sever the unconscionable provisions, it would not be appropriate to do so here because "enforcing the balance of the contract would [not] be in the interests of justice." (*Ramirez, supra*, 16 Cal.5th at p. 517.) The multiple defects in the arbitration agreement "indicate that the stronger party [Blue Origin] engaged in a systematic effort to impose arbitration on the weaker party [Stoker] not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." (*Id.* at pp. 516–517.) As the

27

Supreme Court acknowledged, "[a]lthough there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." (*Id*. at p. 517; see also *Ramirez II, supra*, 108 Cal.App.5th at p. 1306 [on remand from Supreme Court, refusing to sever unconscionable provisions from arbitration agreement].) Here, there are at least four unconscionable elements of the arbitration agreement drafted by Blue Origin and imposed on Stoker as a condition of employment. We decline to incentivize employers to draft one-sided arbitration agreements by modifying this agreement " 'to include the bilateral terms the employer should have included in the first place.' " (*Ramirez II*, at p. 1307.)

The agreement's severance clause does not change our conclusion. As noted above, our Supreme Court has said that if a contract contains a severance clause, "the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." (*Ramirez, supra*, 16 Cal.5th at p. 517.) In the present case, however, "we decline to permit the severance clause to dictate the outcome when, as here, severance of the unconscionable provisions would not further the interests of justice." (*Ramirez II, supra*, 108 Cal.App.5th at p. 1307.)

For all the foregoing reasons, we conclude that section 6 of the employee agreement is unenforceable. We therefore affirm the trial court's order denying Blue Origin's petition to compel arbitration.

28

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Stoker is awarded his appellate costs.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:



ADAMS, J.



HANASONO, J.

29